Richard Lehv (rlehv@frosszelnick.com)
Emily Weiss (eweiss@frosszelnick.com)
FROSS ZELNICK LEHRMAN & ZISSU, P.C.
866 United Nations Plaza
New York, New York 10017
Tel: (212) 813-5900
*Attorneys for Plaintiff*



**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

CROWN AWARDS, INC.,

                               Plaintiff,

    v.

TROPHY DEPOT, INC.; JAMES O'BOYLE; and
HOWARD BECKER,

                             Defendants.

---

Civil Action No. _____

**COMPLAINT**

---

     Plaintiff, Crown Awards, Inc., by its attorneys, Fross Zelnick Lehrman & Zissu, P.C., for

its Complaint against Defendants, Trophy Depot, Inc., James O'Boyle, and Howard Becker,

alleges as follows:

### SUBSTANCE OF THE ACTION

     1.  This is an action for ***blatant and willful*** copyright infringement and unfair

competition on a ***massive*** scale.

     2.  Plaintiff designs, manufactures, and sells trophies, medals, and other awards for

sports competitions and other activities and events. Founded in 1978, Plaintiff started as a single

storefront in Brooklyn, and grew into the largest retailer of awards in the country. Plaintiff has its

own staff of designers, who create original designs for an enormous variety of medals, trophies,

and other awards for sporting events and other competitions and occasions.

3.   Defendants, unable or unwilling to design their own trophies, medals, and awards, have adopted a predatory and unlawful business model, consisting of intentional and wholesale copying of Plaintiff's products and business.  Indeed, whenever Plaintiff releases a new design or adds a new feature to its website, no matter how idiosyncratic or unusual, Defendants shortly thereafter do the exact same thing.  For example, just last month Plaintiff introduced its new prices, and several weeks later Defendants' website started to show the exact same pricing.

4.   Defendants know that their conduct is unlawful, having been enjoined by a federal court in 2005 from infringing the copyright in Plaintiff's catalog and ordered to pay Plaintiff nearly half a million dollars.  Despite these penalties and the court's description of Defendants' conduct as "disturbing," Defendants were undeterred, and they have expanded their infringing activities to include:

- Copying entire lines of products designed by Plaintiff, consisting of hundreds of individual items. The following are several examples:

**Plaintiff's Copyrighted Designs          Defendants' Infringing Copies**







- Copying the component parts of awards, such as Mylar inserts and neck ribbons, which can be combined with thousands of medals and other awards. The following are several examples of inserts copied by Defendants that can be placed on trophies, medals, and plaques, thereby making the finished trophy or award an infringing work:

**Plaintiff's Copyrighted Designs**     **Defendants' Infringing Copies**





The following are four examples of ribbons copied by Defendants that can be attached to medals, thereby making the finished medal an infringing work:

**Plaintiff's Copyrighted Designs**        **Defendants' Infringing Copies**






- Copying the exact look and feel of Plaintiff's "Trophy Builder" for custom design of trophies and other awards:

**Plaintiff's Copyrighted Design**          **Defendants' Infringing Copy**




- Copying the exact look and feel of Plaintiff's "Engraving Engine" for custom engraving of awards:

**Plaintiff's Copyrighted Design**               **Defendants' Infringing Copy**



- Copying the overall look and feel of Plaintiff's homepage, as shown below, and many other pages within the site:

**Plaintiff's Copyrighted Homepage**          **Defendants' Infringing Homepage**

          

- Copying other key elements of Plaintiff's website, namely the look and feel of Plaintiff's display of trophies and awards, as shown below:

**Plaintiff's Copyrighted Page**          **Defendants' Infringing Page**



- Copying of Plaintiff's distinctive navy blue presentation packaging, including the gold lettering and the satin interior:

**Plaintiff's Protected Packaging**      **Defendants' Infringing Packaging**



- Engaging in false advertising, such as claiming that they offer "Same-Day Shipping," when they do not.
- Using Plaintiff's name as a paid keyword to attract consumers to their website.

5.   Despite having full knowledge that their actions are unlawful, Defendants persist in running a business that is based on copying Plaintiff's protected works and, indeed, Plaintiff's entire business. Plaintiff has had no choice than to file this action to stop these recidivist Defendants from copying its products, components, and website, by asking this court to shut down the infringing website as it is currently designed, to permanently enjoin further sale of all the infringing products, and to order Defendants to turn over their ill-gotten gains.

6.   Plaintiff therefore brings claims for copyright infringement under Section 106 of the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. § 106; unfair competition under Section 43(a) of the United States Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1125(a); trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); false advertising under Section 43(a)(1)(B) of the Lanham

Act, 15 U.S.C. § 1125(a)(1)(B); and related claims under New York's statutory and common law.  Plaintiff seeks injunctive and monetary relief.

## JURISDICTION AND VENUE

7.   This Court has jurisdiction under Section 501 of the Copyright Act, 17 U.S.C. § 501, under Section 39 of the Lanham Act, 15 U.S.C. § 1121, under Sections 1331 and 1338(a) and (b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) & (b), and under principles of pendent jurisdiction.  Supplemental jurisdiction exists over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

8.   This Court has personal jurisdiction over Defendants because, on information and belief, (a) Defendant Trophy Depot, Inc.'s place of incorporation and principal place of business is New York, (b) Defendants James O'Boyle's and Howard Becker are both domiciles of New York, and (c) Defendants sell their infringing products to customers in this District.

9.   Venue is proper in this District under Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District, and because Defendants are deemed to reside in this District by virtue of being subject to personal jurisdiction here.

## THE PARTIES

10.   Plaintiff, Crown Awards, Inc., is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 9 Skyline Drive, Hawthorne, New York 10532.

11.   On information and belief, Defendant Trophy Depot, Inc. is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 171 Rodeo Drive, Edgewood, New York 11717.  On information and belief, Trophy Depot, Inc. is the registrant of the domain name *trophydepot.com*.

12.   On information and belief, Defendant James O'Boyle is resident and citizen of the State of New York.  On information and belief, Mr. O'Boyle is the sole shareholder and chief

executive officer of Trophy Depot, Inc., directs and controls its infringing activities, and profits from them.

13. On information and belief, Defendant Howard Becker is an individual residing in and a citizen of the State of New York, and has been the "Creative Director" of Trophy Depot, Inc. since 2009. As such he is responsible for Defendants' infringing designs.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.      Plaintiff and Its Intellectual Property Rights

14. Founded in 1978, Plaintiff today is the largest awards supplier in the United States. Plaintiff supplies awards for myriad activities and occasions, from sporting events to educational achievement to employee recognition to family reunions to chili cook-offs.  If there is an activity or occasion that could possibly require acknowledgement, Plaintiff has designed an award for it. Plaintiff's awards include trophies, medals, plaques, rings, lapel pins, and ribbons, which come in all shapes and sizes and can be customized as desired by the customer.

15. Plaintiff's exclusive products are created by an in-house design team that consists of eight full-time employees.  As a result, the designs of these products are unique to Plaintiff and cannot be purchased from any competitor – that is, until Defendants began copying Plaintiff's exclusive products.

16. Plaintiff offers its products for sale primarily through its website, www.crownawards.com, its annual catalogs, and Crown Trophy retail stores in over forty states. Plaintiff's annual catalog, which contains the entire line of products offered by Plaintiff at the time the catalog is published, is distributed to thousands of consumers and corporate customers across the United States.  Plaintiff advertises through its website, catalogs, promotional emails, and social media, such as Facebook, Instagram, and Twitter.

### A.      *Plaintiff's Trophies, Medals, Plaques, and Other Protected Awards*

17. Plaintiff, through its design team, has independently created thousands of awards and other products.  Plaintiff, as the employer-for-hire, is the author under the Copyright Act of

these original works of authorship. As such, Plaintiff is the owner of all right, title, and interest in and to the copyright in its awards and other products. Attached as Exhibit A hereto are representative samples of Plaintiff's copyrighted products.

18. Plaintiff owns numerous copyright registrations for its products, including, but not limited to, the following registrations:

    a.    U.S. Copyright Registration No. VA 1-850-985 for perimeter medals, which registered on February 4, 2013;

    b.    U.S. Copyright Registration No. VA 1-815-363 for a galaxy star medal, which registered on February 17, 2012;

    c.    U.S. Copyright Registration No. VA 1-639-384 for a galaxy star medal, which registered on March 18, 2008;

    d.    U.S. Copyright Registration No. VA 1-849-588 for a 2013 double action medal, which registered on February 4, 2013;

    e.    U.S. Copyright Registration No. VA 1-329-789 for double action medals for various sports, which registered on August 30, 2005;

    f.    U.S. Copyright Registration No. VAu 676-949 for double action medals for various sports, which registered on September 19, 2005;

    g.    U.S. Copyright Registration No. VA 1-349-552 for double action medals for various sports, which registered on September 7, 2006;

    h.    U.S. Copyright Registration No. VA 1-850-398 for 2" 3D diecast medals, which registered on February 4, 2013;

    i.    U.S. Copyright Registration No. VA 1-892-651 for 2" 3D diecast medals, which registered on February 21, 2014;

    j.    U.S. Copyright Registration No. VA 1-815-364 for 2" 3D diecast medals, which registered on February 17, 2012;

    k.    U.S. Copyright Registration No. VAu 676-956 for 2" 3D diecast medals, which registered on September 19, 2005;

l.     U.S. Copyright Registration No. VA 1-349-556 for 2" 3D diecast medals, which registered on February 7, 2006;

m.     U.S. Copyright Registration No. VA 1-815-391 for a glitter rim insert medal, which registered on February 17, 2012;

n.     U.S. Copyright Registration No. VA 1-902-804 for a large hip hop dog tag, which registered on February 18, 2014;

o.     U.S. Copyright Registration No. VA 1-702-496 for sateen neck ribbons, which registered on February 3, 2010;

p.     U.S. Copyright Registration No. VA 1-851-810 for a pop out star acrylic, which registered on February 1, 2013;

q.     U.S. Copyright Registration No. VA 1-639-410 for 3D laser crystals, which registered on March 18, 2008;

r.     U.S. Copyright Registration No. VA 1-902-772 for diamond plaques, which registered on February 18, 2014;

s.     U.S. Copyright Registration No. VA 1-902-773 for prestige stand-up plaques, which registered on February 18, 2014;

t.     U.S. Copyright Registration No. VA 1-767-936 for icicle stars, which registered on February 3, 2011;

u.     U.S. Copyright Registration No. VA 1-811-025 for black and gold trophy columns, which registered on February 17, 2012;

v.     U.S. Copyright Registration No. VA 1-849-589 for sports trophy cup sculptures, which registered on February 4, 2013;

w.     U.S. Copyright Registration No. VA 1-329-787 for mylars, which registered on August 30, 2005;

x.     U.S. Copyright Registration No. VAu 676-955 for mylars, which registered on September 19, 2005; and

y.   U.S. Copyright Registration No. VA 1-349-554 for mylars, which registered on February 7, 2006.

Copies of the Certificates of Registration listed above are attached as Exhibit B.

19.   Plaintiff also owns numerous copyright registrations for its annual catalogs, which cover the awards and other original works shown therein, such as Plaintiff's "price breaks" (as explained below).  Plaintiff's copyright registrations for its catalogs include the following:

a.   U.S. Copyright Registration No. TX 6-116-209 for Plaintiff's 2005 catalog, which registered on February 1, 2005;

b.   U.S. Copyright Registration No. VA 1-677-366 for Plaintiff's 2008 catalog, which registered on February 9, 2009;

c.   U.S. Copyright Registration No. VA 1-701-983 for Plaintiff's 2010 catalog, which registered on February 3, 2010;

d.   U.S. Copyright Registration No. VA 1-759-294 for Plaintiff's 2011 catalog, which registered on February 3, 2011;

e.   U.S. Copyright Registration No. VA 1-811-016 for Plaintiff's 2012 catalog, which registered on February 17, 2012; and

f.   U.S. Copyright Registration No. VA 1-849-715 for Plaintiff's 2013 catalog, which registered on February 1, 2013.

Copies of the Certificates of Registration listed above are attached as Exhibit C.  Plaintiff also has a pending application to register the copyright in its 2014 catalog, which was filed on April 11, 2014.  Copies of the 2012 and 2013 catalogs are attached as Exhibit D.

## B.   *Plaintiff's Product Packaging*

20.   Formerly, awards and medals were shipped in generic packaging, such as cardboard boxes. Plaintiff was the first supplier in its industry to offer elegant presentation packaging, namely satin-lined boxes, an image of which is attached as Exhibit E.  Plaintiff is the owner of all right, title, and interest in and to the trade dress of such packaging.  Plaintiff's packaging

incorporates several distinct elements that make up the trade dress, including the packaging's royal blue color, a rectangular box with a satin interior, and Plaintiff's logo printed in gold (collectively, the "Packaging Trade Dress").

21.   By virtue of extensive sales, advertising and promotion, the Packaging Trade Dress has become instantly recognizable to the public as exclusively denoting Plaintiff.  As such, the Packaging Trade Dress has obtained secondary meaning and is a valuable asset of Plaintiff.

## C.   Plaintiff's Product Lines

22.   Plaintiff's products are grouped into product lines.  Attached as Exhibit F hereto are images of several of Plaintiff's product lines.

23.   By way of example, one of the product lines within the medals category is the Two-Inch "3D" medal line.  This product line was introduced fifteen years ago, with about twenty medals, and since then Plaintiff has added five to ten medals to the line each year.  Today, there are over 100 medals in this product line.  Plaintiff decides which activities and occasions to include in the product line, often creating medals for activities and occasions that have never before been represented on medals, such as a 5-kilometer run and a mud run.  Once the activity or occasion is selected, Plaintiff independently designs the artwork on each medal.  As a result, all of these 3D medals are original works created by Plaintiff.

24.   Other product lines within the medals category include "double action" medals and "perimeter" medals, on which the year is repeated around the rim (e.g., 2014 or 2015).  There are also product lines within the other award categories.  For example, within the sculptures category there are numerous product lines, such as a line of cup sculptures, and within the crystal awards category there are several product lines, such as a line of 3D laser-printed crystal blocks.

25.   Plaintiff also creates lines of components that can be added to its products.  For example, it has designed hundreds of Mylar inserts that can be added to the front of medals, placed on top of trophies, and placed on plaques.  It is often the insert that gives an award its meaning and makes the award unique, differentiating it from other awards.  For example, if a

child plays sports every year and receives a medal at the end of each season, most likely the key differentiating component of his or her medal will be the insert, as the insert will show the sport (soccer, basketball, baseball, etc.) or other activity for which this particular medal was awarded. Thus, the insert is often the reason for the consumer's purchase of the entire medal or award.

26.   Plaintiff's collection of inserts is unique in the industry.  Plaintiff began designing its own line of inserts over twenty years ago.  The line began with about thirty inserts, and today includes over 500 styles.  Plaintiff decides which activities and occasions to represent on the inserts, selecting from thousands of possibilities.  Plaintiff's design team independently creates the artwork for the inserts, often researching an activity to determine a design that would appeal to participants of that activity.  For some sports, Plaintiff offers dozens of designs.  Plaintiff's design team also has designed inserts with rhinestones, glitter, or embossing, which no other awards company had done before Plaintiff.

27.   Neck ribbons are another component that Plaintiff designs. Plaintiff's neck ribbons also can be used with virtually all of its medals.  Plaintiff's design team has independently created numerous original neck ribbon designs, some displaying the year and others showing the activity.

28.   Individual items in all of Plaintiff's product lines are designed for hundreds of specific activities or occasions, including sports such as baseball, soccer, football, and gymnastics, non-sports competitions such as baking and chili cooking, academic achievement, music and dance, and countless others, including such new competitions as mud runs. Plaintiff even offers an award for an ugly Christmas sweater party.  Other items, such as crystal awards, are initially blank, and are engraved with the achievement intended to be recognized and perhaps the name of the recipient.

29.   To create all of these product lines, components, and individual products, Plaintiff independently selected, coordinated, and arranged a vast number of elements, including activities, occasions, and competitions, and also selected, coordinated, and arranged the images or designs used to represent visually each activity, occasion, or competition to be shown on each

product or component.  For example, there are countless ways to represent a judo competition. Plaintiff chose to represent judo on its two-inch 3D medal by showing one wrestler flipping the other over his hip, with both wrestlers surrounded by a fan-like pattern, within a circle of stars. (See illustration in Paragraph 3, above.)  Plaintiff is the owner of all right, title, and interest in and to the copyright in such original selection, coordination, and arrangement of products, components, and product lines.

30.   The selection, coordination, and arrangement in Plaintiff's products, components, and product lines are covered by the copyright registrations for Plaintiff's catalogs and website, among others.  *See* Ex. C *infra*, Ex. H *supra*.

### D.     *Plaintiff's Website*

31.   Plaintiff has independently created the content and design of each iteration of its website.  Plaintiff independently created the look and feel of its website, which is an original work of authorship. Plaintiff is the owner of all right, title, and interest in and to the copyright in its website.  Attached as Exhibit G hereto are screenshots of several representative pages of Plaintiff's website, including the homepage and several individual product pages.

32.   Plaintiff owns the following copyright registrations for its website:

      a.      U.S. Copyright Registration No. TX 5-704-496 for Plaintiff's website, which registered on April 28, 2013; and

      b.      U.S. Copyright Registration No. VA 1-334-708 for Plaintiff's website, which registered on December 13, 2005.

Copies of the Certificates of Registration listed above are attached hereto as Exhibit H.  Plaintiff also has an additional application pending to register the copyright in its website, which was filed on June 27, 2013.

33.   In addition, Plaintiff is the owner of all right, title, and interest in and to the trade dress of its website.  Plaintiff's website incorporates several distinct elements that make up the trade dress, including:

a.  a homepage with a header at the top that features Plaintiff's logo and the categories of products sold by Plaintiff, two keyword search bars (one at the upper right and one in the left margin), featured products arranged in four columns, and information about Plaintiff underneath the featured products;

b.  pages showing a category of awards (such as trophies or medals), each of which shows the header at the top, underneath which are certain featured product lines within the category and beneath that the full set of product lines within the category, which are displayed in four columns, and a vertical frame on the left side containing links to subcategories within the category; and

c.  individual product pages with the header at the top, a picture of the product, and the price breaks to the right of the product.

Such elements collectively create a particular trade dress that is characteristic of Plaintiff's website (the "Website Trade Dress").

34.  For over a decade and continuing through today, Plaintiff has made widespread and exclusive use of its Website Trade Dress.  Plaintiff has enjoyed enormous success selling products through its website.

35.  As a result of Plaintiff's efforts, the Website Trade Dress has become instantly recognizable to the public as exclusively denoting Plaintiff.  As such, the Website Trade Dress has obtained secondary meaning and is an enormously valuable asset of Plaintiff.  Except for Defendants' infringing design, Plaintiff's competitors do not use this trade dress.  Except for Defendants' unlawful copy, the Website Trade Dress is unique to Plaintiff.

**E.  *Plaintiff's Trophy Builder and Engraving Engine***

36.  Plaintiff offers customers various options to customize their awards.  For example, a customer can build his or her own trophy, choosing the preferred base, column, and figurine or

insert to top the trophy.  Customers also can engrave their awards with personalized text (*e.g.*, with the name of the award's recipient or the name and year of an event).  When such customization is done on Plaintiff's website, it is done through two unique web-based programs developed by Plaintiff:  the Trophy Builder and the Engraving Engine.

37.  The Trophy Builder assists customers with selecting the component parts of awards.  Although the name implies that it is meant for customizing trophies, the Trophy Builder works for all types of awards.  As the customer selects the different parts of the award, an onscreen image of the award updates to show the customer's choices.  Thus, a customer can see what his or her customized award will look like before it is assembled by Plaintiff, a feature that is unique to Plaintiff.  Attached as Exhibit I hereto are screenshots from Plaintiff's website demonstrating how the Trophy Builder program works for several types of awards.

38.  As shown in Exhibit I, the Trophy Builder involves several steps.  For example, when using the Trophy Builder to create a customized trophy, the customer first picks a trophy style, which brings the customer to the product page for that trophy style.  Then the customer selects the size of the trophy, which causes several drop-down boxes to appear.  The first drop-down box requires the customer to select an activity or occasion, such as a sport, hobby, or holiday.  The activity or occasion chosen will determine the contents of the next drop-down box, which the customer uses to pick a figurine or insert to top the trophy.  So, if a customer chooses soccer as the activity, the next drop-down box will contain a number of soccer-related figurines or inserts, such as a soccer ball or a man or woman kicking a soccer ball, among others.  But if a customer selects track and field as the activity, he or she will be presented with figurines or inserts that relate to track and field.  Once the figurine or insert is selected, it is shown in the product's image. Next the customer picks the column color, which also appears in the product's image.  Finally, the customer selects the base color.  Once these steps are completed, the final product is shown in the product's image.

39.  Plaintiff has independently created the overall look and feel of the Trophy Builder, which is an original work of authorship, involving the selection, coordination and arrangement of

numerous elements.  As such, Plaintiff is the owner of all right, title, and interest in and to the copyright in the Trophy Builder.

40.   The Trophy Builder is the subject of U.S. Copyright Registration No. TX 6-415-744, owned by Plaintiff and which registered on December 13, 2005.  A copy of the Certificate of Registration is attached hereto as Exhibit J.  Plaintiff has an additional application pending to register the copyright in its Trophy Builder, which was filed on December 30, 2014.  The Trophy Builder is also subject to Plaintiff's copyright registrations for its website.  *See* Ex. H.

41.   The Engraving Engine facilitates the customization of text on awards.  Like the Trophy Builder, the Engraving Engine lets the customer see how the engraved text will appear on the product before it is actually engraved by Plaintiff.  Attached as Exhibit K are screenshots from Plaintiff's website showing the various steps of the Engraving Engine for several types of awards.

42.   Before entering the Engraving Engine, the customer indicates whether each award should have the same text or different text (*e.g.*, engrave each award with a different recipient's name).  Then the customer clicks the blue Engraving Engine button on the product page, which causes the Engraving Engine to appear in a pop-up screen.

43.   The customer then types in his or her desired text.  If the customer chose to have different text on each award, he or she will indicate for each line whether it should appear on all of the awards or just that particular one.  For example, the customer might want to put "State Championship" and "New York" on the first two lines of each award, but engrave different text on the third line of each award, such as "First Place," "Second Place," and "Third Place."  The Engraving Engine does not require a customer to separately type the repeating lines for each award.  Further, for some products, the Engraving Engine allows the customer to select the size of the text (small, medium, or large) and elect whether to insert an ornament instead of text on a specific line.

44.   Plaintiff has independently created the look and feel of the Engraving Engine, which is an original work of authorship, involving the selection, coordination and arrangement of

numerous elements.  As such, Plaintiff is the owner of all right, title, and interest in and to the copyright in the Engraving Engine.

45.   The Engraving Engine is the subject of U.S. Copyright Registration No. TX 6-415-745, owned by Plaintiff and which registered on December 13, 2005. A copy of the Certificate of Registration is attached hereto as Exhibit L.  Plaintiff has an additional application pending to register the copyright in its Engraving Engine, which was filed on December 30, 2014.  The Engraving Engine is also subject to Plaintiff's copyright registrations for its website.  *See* Ex. H.

46.   The look and feel of the Trophy Builder and Engraving Engine are unique to Plaintiff.  There are many ways for companies to present their customization options to consumers.  Thus, while many of Plaintiff's competitors offer customized awards, none – except for Defendant's unlawful copies – use designs that are the same as or substantially similar to Plaintiff's designs.

## F.   *Plaintiff's Presentation of Its Pricing Policies*

47.   The price of Plaintiff's awards depends on how many units the consumer purchases; the unit price decreases if more awards are purchased.  The number of units at which the price decreases is referred to as a "price break."  Plaintiff has different price breaks for different types of awards.  For example, Plaintiff's 2014 catalog offered eight prices breaks for medals (at 1, 10, 50, 100, 300, 500, 750, and 1,000 units), five price breaks for trophies (at 1, 10, 50, 100, and 250 units), and four price breaks for crystal awards (at 1, 10, 50, and 100 units).  For each of these awards, the price per unit is lower if the consumer buys 60 units instead of 40 units, and even lower if the customer buys 120 units instead of 60.  Plaintiff invested much time and effort in determining suitable price breaks and how to present such price breaks to customers.

48.   Plaintiff's pricing structure has other characteristics as well.  It offers certain features at no cost, such as a free logo on crystal and acrylic awards if the customer orders more than twenty-five units and free engraving of forty characters on trophies and plaques, with additional characters costing 10 cents per character on trophies and 25 cents per character on plaques.  But

the first forty characters are not free on all types of awards.  For example, it costs 50 cents per medal to engrave the same text on each medal, and 75 cents per medal to engrave different text on each medal.

49.   To create its pricing structure, Plaintiff has independently selected, coordinated, and arranged its price breaks with the per unit prices.  Moreover, Plaintiff has independently created the look and feel of those portions of its catalogues and website that present Plaintiff's price breaks and other pricing policies.  As such, Plaintiff is the owner of all right, title, and interest in and to the copyright in the design of its price break presentations.  Attached as Exhibit M are examples of how Plaintiff compiles and presents its price breaks to consumers.

50.   The selection, coordination, and arrangement in Plaintiff's price breaks, as well as the overall look and feel of its presentation of its pricing information, are covered by the copyright registrations for Plaintiff's catalogs and website.  *See* Exs. C, H, *infra*.

## G.   *Plaintiff's CROWN AWARDS Trademark*

51.   Plaintiff has been using the CROWN AWARDS name and mark since its founding in 1978.

52.   Plaintiff extensively advertises and promotes its CROWN AWARDS mark.  Plaintiff has achieved great commercial success under the CROWN AWARD mark over the last several decades.

53.   In addition to Plaintiff's extensive and strong common law rights in the CROWN AWARDS trademark that have resulted from this use, Plaintiff owns the following U.S. trademark registrations for the mark CROWN AWARDS:  U.S. Registration No. 2,663,903 for use in connection with "custom design and printing of trophies, medals, plaques, ribbons, awards and desk sets for others" in International Class 42, which issued on December 17, 2002, and is based on a first use in commerce on January 1, 2001; and U.S. Registration No. 2,586,186 for "mail order retailing services and electronic retailing services via computer featuring trophies,

medals, plaques, ribbons, awards and personalized desk sets" in International Class 35, which issued on June 25, 2002, and is based on a first use in commerce on January 1, 2001.

54.   Printouts detailing the registration information for the above marks are attached hereto as Exhibit N.  These registrations are all valid, subsisting, and in full force and effect. Moreover, the above registrations have become incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, and serve as conclusive evidence of the validity of the registered marks, of the registration of the marks, and of Plaintiff's exclusive right to use the marks in commerce on or in connection with the products for which the marks are registered, as provided by Section 33(b) of the Lanham Act, 15 U.S.C. § 1115(b).

## II.   Defendants and Their Unlawful Conduct

### A.   *Defendants' Business Model is Based on Copying Plaintiff*

55.   Defendants own and operate Trophy Depot, which supplies awards for various activities and occasions.  Like Plaintiff, Defendants offer their awards for sale through their website, located at *www.trophydepot.com*, and their print catalog.

56.   On information and belief, Trophy Depot does not have a design department. Instead, Defendants copy Plaintiff's product designs and product lines to create awards and product lines that are substantially similar to Plaintiff's original works.  Further, Defendants have modeled their website, including their designs for building customized awards and engraving personalized text, on Plaintiff's website. As a result, Defendants' website has the same overall look and feel as Plaintiff's original, copyrighted website.

57.   That Defendants do not design their own awards is confirmed by Defendant Becker, who is Trophy Depot's "Creative Director."  Mr. Becker states on his resume that he manages "product additions or removal using competitive research."  *See* Howard Becker's resume on *www.indeed.*com, attached hereto as Exhibit O.

58.   Defendants are not ignorant of the unlawfulness of their conduct.  Plaintiff previously brought a lawsuit against Defendants for, *inter alia*, copyright infringement of

Plaintiff's catalogs, and earlier versions of its website and advertising materials.  *Crown Awards Inc. v. James Engravers, Ltd.,* Civil Action No. 03-2448 (E.D.N.Y 2005).  In addition to granting Plaintiff a preliminary injunction concerning copyright infringement of Plaintiff's catalog, in which the Court called Defendants' conduct "disturbing," the court entered a final judgment on consent, which made the injunction permanent, and ordered Defendants to pay plaintiff $430,000!  *See* Consent Judgment, attached hereto as Exhibit P.

**B.      *Defendants' Infringing Activity and False Advertising***

59.   Defendants' infringing conduct is far more pervasive than that at issue in the prior lawsuit.  This time, Defendants are infringing Plaintiff's copyrights in the designs in Plaintiff's awards, the selection, arrangement, and coordination in Plaintiff's product lines, the overall look and feel of Plaintiff's Trophy Builder and Engraving Engine as well as the overall website, Plaintiff's price breaks, and Plaintiff's Packaging Trade Dress.  In addition, they are falsely advertising that they offer "Same-day Shipping," and are using Plaintiff's trademark as a paid keyword.

*1.      Defendants' Infringing Awards*

60.   Defendants have willfully manufactured, offered for sale, and sold thousands of awards that are substantially similar, if not identical, to Plaintiff's copyrighted awards.  In addition, Defendants have copied many of Plaintiff's inserts and neck ribbons as well.  Thus, even when Defendants sell a trophy that is not copied from one of Plaintiff's trophies, they will likely combine it with an infringing insert or neck ribbon, making the entire product an infringing copy.  Defendants have intentionally engaged in such copying of Plaintiff's protected designs in its awards, inserts, and neck ribbons.

61.   Defendants' copying has become so common that nearly every time Plaintiff introduces a new award, Defendants start selling a substantially similar award shortly thereafter.  Defendants appear to be constantly monitoring Plaintiff's website for new products to copy.  For example, Plaintiff was the first company to offer medals that print the words "GOLD,"

"SILVER," and "BRONZE" on medals of those colors. No sooner had Plaintiff added those products than Defendants offered infringing copies:

**Plaintiff's Copyrighted Designs**          **Defendants' Infringing Copies**

  

62.   As another example, the design on Plaintiff's mud run medal is a muddy footprint, with brown paint used for the mud.  This is the first medal in Plaintiff's Two-Inch 3D medal product line with added color.  Defendants immediately followed suit, also using brown paint in a product line that otherwise has no color. Further, there are countless ways to represent a mud run; that Defendants also use a muddy footprint is telling.

**Plaintiff's Copyrighted Design**          **Defendants' Infringing Copy**

 

63.   Finally, no sooner had Plaintiff added a medal for an "Ugly Christmas Sweater party" than Defendant's added a product for an "Ugly Christmas Sweater," as follows:

**Plaintiff's Copyrighted Design**     **Defendants' Infringing Copy**

     

64.   Defendant's copying is not limited to these medals and inserts.  As shown below and in the attached exhibits, Defendant' copying extends to all types of awards, inserts, and neck ribbons.  For example, Plaintiff has long offered Two-Inch 3D medals for a wide variety of activities and occasions, and just recently Defendants began offering nearly identical Two-Inch 3D medals for the same activities and occasions.  Below are several examples of Plaintiff's Two-Inch 3D medals next to Defendants' infringing medals:

**Plaintiff's Copyrighted Designs**     **Defendants' Infringing Copies**

     









 

65.   As is apparent from these images, Defendants' medals are substantially similar to Plaintiff's medals.  For example, both of the 5-kilometer race medals consist of a shoe with wings and the text "5K," which are encircled by a decorative rim.  Moreover, on both 5-kilometer race medals certain parts of the design extend beyond the medals' borders.  The judo medals are also disconcertingly similar.  Both show two men in the same judo pose on top of a fan-shaped background, surrounded by stars.   In fact, Defendant's image of the men is identical to Plaintiff's image; the only difference is that Defendant's image has been reversed.  And the twirling medals are virtually identical—both have the term "Twirling" across the bottom of the medal and batons radiating from a central point in the medal.

66.   All of Plaintiff's Two-Inch 3D medals were offered for sale before Defendants began offering their copies for sale.  In addition, Defendants' entire line of Two-Inch 3D medals consists of copies.  In other words, Defendants do not offer for sale a single Two-Inch 3D medal that is not a copy of one of Plaintiff's medals.  This is remarkable evidence of Defendants' intentional copying.

67.   Other medals offered by Defendants also are substantially similar to those offered by Plaintiff.  For example, the perimeter and double action medals, as shown below:

**Plaintiff's Copyrighted Designs**     **Defendants' Infringing Copies**



68.   As further example of Defendants' willful and blatant copying, shown below are trophy cups offered by both Plaintiff and Defendants:

**Plaintiff's Copyrighted Designs**      **Defendants' Infringing Copies**



69.   The cups on both Plaintiff's and Defendant's trophies are identical:  parallel grooves encircle the cup underneath a wavy rim, with S-shaped handles that have similar design details. The bases also are the same.  In addition, each sport is represented by the same sculpture—both soccer cups are adorned with a cleated shoe resting against a soccer ball, and both basketball cups are adorned with a basketball next to a hoop.

70.  Another example is Defendants' 3D laser crystal blocks, which are nearly identical to the 3D laser crystal blocks offered by Plaintiff:

**Plaintiff's Copyrighted Designs**          **Defendants' Infringing Copies**







 

71.  The similarities between Plaintiff's and Defendants' awards do not end there.  Like Plaintiff, Defendants offer inserts for use in connection with many different types of awards, such as trophies, medals, and plaques.  Many of Defendants' inserts are substantially similar to Plaintiff's inserts, as shown below:

**Plaintiff's Copyrighted Designs**     **Defendants' Infringing Copies**

     













72.  Finally, many of Defendants' medal neck ribbons are substantially similar to those designed, created, and copyrighted by Plaintiff.  Each of Defendants' neck ribbons can be attached to any of its medals.  Thus, Defendants' infringing neck ribbons can be paired with any of the medals that Defendants offer for sale.  One example of Defendants' blatant copying of Plaintiff's neck ribbon is their year neck ribbon.  In 2014, Plaintiff released a new neck ribbon, which displayed the year vertically, as shown below.  Prior to 2014, Plaintiff, like every other awards retailer, including Defendants, displayed the year horizontally on its neck ribbons. This year, however, Defendants released a new neck ribbon with the year displayed vertically, as shown below.  Defendants immediately copied Plaintiff's protected neck ribbon.

**Plaintiff's Copyrighted Design**          **Defendants' Infringing Copy**

    

73. Defendants' copying of other neck ribbons of Plaintiff is shown below:

**Plaintiff's Copyrighted Designs**          **Defendants' Infringing Copies**

    





 

74.   The above are just several examples of Defendants' practice of intentionally copying Plaintiff's protected awards, inserts, and ribbons, and manufacturing and offering for sale such copies in violation of Plaintiff's exclusive rights under the copyright law.  Attached as Exhibit Q are more examples of Plaintiff's awards, inserts, and ribbons shown side-by-side with Defendants' infringing awards, inserts, and neck ribbons.

2.   *Defendants' Infringing Product Lines*

75.   Defendants have offered for sale and sold product lines that reflect a selection, coordination, and arrangement that is substantially similar to Plaintiff's. Defendants have intentionally copied Plaintiff's selection, coordination, and arrangement in its product lines.

76.   For example, both Plaintiff and Defendants offer a line of 3D laser crystal blocks, as shown below:

**Plaintiff's Copyrighted Line**          **Defendants' Infringing Line**

 

77.   Defendants have selected the same activities for their 3D laser crystal product line as Plaintiff.  Moreover, Defendants use an image for each activity that is substantially similar to the image used by Plaintiff for the same activity. Thus, this copying represents the exact same selection, coordination and arrangement as on Plaintiff's website and is conclusive evidence of willful infringement.

78.   Defendants also have copied Plaintiff's crystal awards.  Plaintiff's crystal awards come in various shapes, all of which were selected, coordinated, and arranged by Plaintiff to

create the crystal product line.  As shown below, of the thousands of shapes available,

Defendants offer for sale a crystal product line that uses the same shapes as Plaintiff's line:

**Plaintiff's Copyrighted Line**          **Defendants' Infringing Line**












79.   These are just some examples of the substantial similarity resulting from Defendants' willful copying of Plaintiff's selection, coordination, and arrangement in its product lines.  Attached as Exhibit R are more examples of Plaintiff's protected product lines shown side-by-side with Defendants' infringing product lines.

3.   *Defendants' Infringing Website*

80.   The overall look and feel of Defendants' website is substantially similar to that of Plaintiff's website.  Moreover, Defendants' website incorporates the elements that make up Plaintiff's Website Trade Dress, thereby making consumer confusion likely.  Attached as Exhibit S hereto are several pages from Plaintiff's website side-by-side with the equivalent pages from Defendants' website.

81.   As shown in Exhibit S, the similarities between the websites can been seen on many pages, including the homepages, the pages showing a category of awards (such as trophies or medals), the individual product pages, the "About Us" pages, the catalog order form pages, the policy pages, and the pages showing the various activities and occasions for which awards can be purchased.  For example, just as Plaintiff uses two search boxes in on its website (one at the top right and the other below the first at the left margin), Defendants use two search boxes on their website (one at the top right and the other below the first on the left.)  There is no need for a website to have two search boxes on the home page and few other websites have two.  Defendants appear to have used two search boxes simply because they slavishly copy whatever Plaintiff does.

82.   Similarly, Defendants' home page shows its main categories of products in four columns, just like Plaintiff's home page. And when the customer clicks on one of those product categories on either website, the customer is taken to a page that shows the individual products in the category in a nearly identical four-column array, and both websites have links to product subcategories in the left margin. The similarities are so close that, if the customer has both web

pages open at the same time, it is hard to tell which one the customer is looking at any given moment.

83.   There are numerous other similarities in the text on the website.  For example, Plaintiff's history on its website has a photograph of its facility and says, "Crown Awards is America's leading supplier of awards for corporate businesses and youth sports. Founded by Chuck Weisenfeld in 1978, Crown started as from a single store front operation in Brooklyn, New York and blossomed into the largest retailer of awards in the country. . . . Crown started its business as a small trophy shop and has grown to our current 250,000 square foot facility in Hawthorne, New York."  Copying that, Defendants include a photograph of their facility and the following statements, "From our humble beginnings as a small trophy shop in Queens, NY to one of the largest trophy & award suppliers in the world. . . . 2011: Trophy Depot expands and Moves again to Edgewood, NY to a beautiful 51,000 sq. ft. facility, with a staff of over 120 people."

84.   These similarities between the parties' respective websites are the result of Defendants' intentional copying of Plaintiff's website.

*4.     Defendants' Infringing Customization Programs*

85.   Plaintiff's Trophy Builder and Engraving Engine are unique to Plaintiff.  While many of Plaintiff's competitors also offer customization options, none, except Defendants, present and display their customization programs using the same visual design for the user interface.  The unique look and feel of the Trophy Builder and Engraving Engine is the result of Plaintiff's investment of time and resources into their development.  A team of employees with knowledge of website and database development determined what type of user interfaces would provide the customer with an easy and positive experience customizing awards on Plaintiff's website, and then that team set out to create such designs.

86.   Defendants, like Plaintiff, provide customers the option of building their own awards and engraving personalized text onto awards.  The overall look and feel of Defendants' awards

builder and engraving programs is substantially similar to that of Plaintiff's Trophy Builder and Engraving Engine, respectively.  Attached as Exhibit T are pages showing Plaintiff's Trophy Builder and Engraving Engine side-by-side with Defendants' infringing customization user interface.  As shown in this exhibit, a customer who uses Defendants' customization program encounters the same user interface as a customer who uses Plaintiff's Trophy Builder and Engraving Engine.

87.  Defendants intentionally copied Plaintiff's Trophy Builder and Engraving Engine. Such copying allowed Defendants to freeload off of Plaintiff by saving time, money, and effort in developing their own customization designs.

5.  *Defendants' Use of Identical Price Break Displays*

88.  Attached as Exhibit U are pages showing Plaintiff's 2014 and 2015 price breaks compared with Defendants' 2014 and 2015 price breaks.  As shown in this exhibit, Defendants display price breaks and prices per unit within each break that are virtually identical to the designs created by Plaintiff.  Thus, Defendants' selection, coordination, and arrangement of its price breaks and prices, as well as the overall look and feel of their presentation, are substantially similar to the look and feel of Plaintiff's displays.

89.  Defendants intentionally copied the selection, coordination, and arrangement of Plaintiff's price breaks and the overall look and feel of Plaintiff's presentation of its pricing information.  As evidence of such intentional copying, on January 15, 2015, Plaintiff updated its price breaks, and shortly thereafter, Defendants came out with the same revised price breaks. *See* Ex. U (2015 price breaks).

6.  *Defendants' Infringing Blue Packaging*

90.  Like Plaintiff, Defendants' awards are packaged in blue boxes.  Attached as Exhibit V are images showing Plaintiff's presentation packaging and Defendants' presentation packaging side-by-side.  As shown in these images, Defendants' packaging incorporates all of the elements

of Plaintiff's Packaging Trade Dress—both rectangular boxes are royal blue with a satin interior, and the companies' logos are printed in gold on both.

91.   Such similarities are the result of a deliberate attempt by Defendants to attract customers by using the goodwill in Plaintiff's Packaging Trade Dress.

7.   *Defendants' False Advertising*

92.   Defendants prominently advertise on their website that they offer "Same-day Shipping" on engraved trophies and medals if such awards are ordered before 4:00 P.M. on business days.  *See* homepage of Defendants' website showing same-day shipping advertisement, attached hereto as Exhibit W.  Buried within Defendants' website, however, is fine-print text that states that same-day shipping is not available in April, May, June, or October. *See* screenshot of Defendants' website showing shipping policies, attached hereto as Exhibit X. Defendants do not remove the same-day shipping advertisement from their website during those months.  Attached as Exhibit Y hereto is a screenshot from Defendants' website showing the same-day shipping advertisement prominently featured on their website in June, one of the months in which same-day shipping is not offered.  Thus, the "Same-Day Shipping" claim is blatantly false.

93.   Plaintiff has an interest in making sure that consumers are not deceived as to Defendants' ability to provide same-day shipping.  As a result of Defendants' misrepresentation that they offer "Same-day Shipping," consumers are more likely to purchase awards from Defendants than if Defendants did not claim to offer that benefit to consumers.

94.   Plaintiff has invested heavily in being able to offer same-day shipping to its customers.  Efforts taken by Plaintiff include building a large warehouse, carrying massive inventories, and hiring many employees to fulfill orders, all of which have required exerting significant time and resources.

95.   The only reason that Defendants claim to offer same-day shipping is that Plaintiff offers it.  Defendants added the same-day shipping advertisement to their site immediately after

Plaintiff began to advertise it.  Thus, Defendants' misrepresentation is a deliberately deceptive attempt to misrepresent their ability to provide same-day shipping to compete unfairly with Plaintiff.

96.  Defendants' conduct is intended to mislead consumers.  Defendants lure consumers to their site on the promise of same-day shipping when they know that they are not able to deliver on such a promise.  In fact, Defendants even allow customers to place orders for thousands of pieces of obscure items, promising same-day shipping on such obscure items, despite having knowledge that they could not possibly provide same-day shipping on these products because they do not have them in stock.  On information and belief, Defendants call such customers the next day informing them that the promised same-day shipping cannot be honored.  Such bait-and-switch tactics are misleading to consumers.

8.      *Defendants' Use of "Crown Awards" as Keyword*

97.  On information and belief, Defendants have purchased "Crown Awards" as a keyword on Google's search engine.  As a result, a Google search for "Crown Awards" yields a paid advertisement for Trophy Depot.  *See* Exhibit Z attached hereto, showing paid advertisement for Trophy Depot resulting from Google search for "Crown Awards."

98.  On information and belief, Defendants have purchased the "Crown Awards" keyword to confuse and deceive consumers about the affiliation, connection, or association between Defendants and Plaintiff, or as to Plaintiff's sponsorship or approval of Defendants' goods, services, or commercial activities.

*            *            *

99.  The conduct described in the Complaint amounts to copying of every aspect of Plaintiff's business.  Defendants have copied entire lines of products, individual product and component designs, the selection, coordination, and arrangement of products on the website, the display of pricing of the products, and the look and feel of the website pages that allow the products to be designed (Trophy Builder) and customized (Engraving Engine).  Indeed, a

customer cannot order an award from Defendants without encountering an infringing aspect of Defendants' business.  As a result, the only way for these recidivist Defendants to stop their infringing conduct is to redesign their entire business, including their website, from scratch, and stop selling all their infringing products.

**FIRST CLAIM FOR RELIEF**
**COPYRIGHT INFRINGEMENT IN VIOLATION OF 17 U.S.C. § 106**

100.  Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

101.  Plaintiff's awards, product lines, catalog, website, and Trophy Builder and Engraving Engine programs (collectively, the "Copyrighted Works") are original and creative works of Plaintiff.  Plaintiff is the owner of all right, title, and interest in and to the copyright in the Copyrighted Works and own the copyrights registrations for the same.

102.  Defendants, without Plaintiff's authorization or consent, have willfully manufactured, displayed, advertised, reproduced, distributed, imported, offered for sale, and sold products incorporating designs that were copied from and are substantially similar to Plaintiff's awards.

103.  Defendants, without Plaintiff's authorization or consent, have willfully manufactured, displayed, advertised, reproduced, distributed, imported, offered for sale, and sold product lines incorporating a selection, coordination, and arrangement of elements that was copied from and is substantially similar to the selection, coordination, and arrangement reflected in Plaintiff's product lines.

104.  Defendants, without Plaintiff's authorization or consent, have displayed, advertised, and reproduced the design and content of Plaintiff's website, including the Trophy Builder and Engraving Engine.  As such, Defendants' website has the same overall look and feel as Plaintiff's website, and reflects the same selection, coordination and arrangement of elements as Plaintiff's website, including the Trophy Builder and Engraving Engine.

105. Defendants thereby have violated and, on information and belief, continue to violate, Plaintiff's exclusive rights in the Copyrighted Works under Section 106 of the Copyright Act, 17 U.S.C. § 106, in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

106. On information and belief, Defendants' aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

107. Defendants' infringement of Plaintiff's exclusive rights in the Copyrighted Works has enabled Defendants to profit illegally therefrom.

108. Defendants' copyright infringement has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF:
## TRADE DRESS INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1125(a)

109. Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

110. Plaintiff's Website Trade Dress is used in commerce, is non-functional, and is inherently distinctive or has acquired secondary meaning as the indicator of Plaintiff as the exclusive source of products containing or incorporating such design.

111. Defendants have adopted the Website Trade Dress and have, without Plaintiff's authorization or consent, used the Website Trade Dress or designs that are confusingly similar thereto on Defendants' own website.

112. Plaintiff's Packaging Trade Dress is used in commerce, is non-functional, and is inherently distinctive or has acquired secondary meaning as the indicator of Plaintiff as the exclusive source of products containing or incorporating such design.

113. Defendants have adopted the Packaging Trade Dress and have, without Plaintiff's authorization or consent, used the Packaging Trade Dress or designs that are confusingly similar thereto on Defendants' own packaging.

114.  Defendants' conduct is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association between Defendants and Plaintiff, or as to Plaintiff's sponsorship or approval of Defendants' goods, services, or commercial activities.

115.  As a result of the foregoing, Defendants have falsely designated the origin of their website, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

116.  On information and belief, Defendants' aforesaid conduct has been undertaken knowingly, willfully, and in bad faith.

117.  Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

### THIRD CLAIM FOR RELIEF:
### TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1)

118.   Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

119.  Over many years of extensive use in connection with the sale of awards, Plaintiff's federally registered CROWN AWARDS mark has become well-known in the industry nationwide.  Plaintiff has established a strong reputation and substantial goodwill by reason of its success and reputation.

120.  Defendants' actions described above, including its use of CROWN AWARDS as a Google keyword, are likely to cause confusion and mistake and to deceive consumers into believing that Defendants' goods and services are provided, authorized, endorsed, or sponsored by Plaintiff, thereby damaging Plaintiff's reputation, goodwill, and sales.

121.  Defendants' conduct described herein is willful and violates Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

122.  Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF:**
**FALSE ADVERTISING IN VIOLATION OF 15 U.S.C. § 1125(a)(1)(B)**

123.  Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

124.  Defendants advertise on their website that they offer "Same-day Shipping," but they in fact do not offer same-day shipping at least four months out of the year.

125.  Defendants' representation all year round that they offer "Same-day Shipping" is a false and misleading description of fact and a false and misleading representation of facts in commercial advertising or promotion that misrepresents the nature, characteristics, or qualities of Defendants' products, services, and commercial activities.

126.  On information and belief, Defendants made this false and misleading representation of fact to lure consumers to Defendants' Website.

127.  Defendants have placed both their false and deceptive advertising and the goods sold as a result of such deceptive advertising in interstate commerce and into this district.

128.  Defendants' conduct described herein is willful and violates Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

129.  Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

130.  Defendants' conduct as described herein is also harming the public.

**FIFTH CLAIM FOR RELIEF:**
**COMMON LAW TRADE DRESS INFRINGEMENT**

131.  Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

132.  Defendants' aforesaid conduct constitutes common law trade dress infringement under the common law of the State of New York.

133.  Defendants' aforesaid conduct of common law trade dress infringement has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF:
## COMMON LAW UNFAIR COMPETITION

134.  Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

135.  Defendants' aforesaid conduct constitutes common law unfair competition with Plaintiff under the common law of the State of New York.

136.  Defendants' aforesaid conduct of common law unfair competition has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF:
## DECEPTIVE TRADE PRACTICES
## IN VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

137.  Plaintiff repeats and incorporates herein by reference each of the foregoing allegations.

138.  By reason of the acts set forth above, Defendants have been and are engaged in deceptive acts or practices in the conduct of a business, trade, or commerce, in violation of Section 349 of the New York General Business Law.

139.  On information and belief, through such deceptive acts, Defendants have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the state of New York.

140.  On information and belief, Defendants' conduct is willful and in knowing disregard of Plaintiff's rights.

141.  Defendants' aforesaid conduct has caused, and unless enjoined by this Court, will continue to cause, Plaintiff to sustain irreparable damage, loss, and injury, for which Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff demands judgment as follows:

1.  That a permanent injunction be issued enjoining Defendants, any of their respective officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors, and assigns, and all those persons in concert or participation with any of them who receive actual notice of the order by personal service or otherwise, from:

(a)      infringing any of Plaintiff's copyrights, including, without limitation, by manufacturing, reproducing, importing, distributing, displaying, advertising, promoting, offering for sale, selling, distributing, importing, or exporting any infringing works, or by operating any website or customization program that is substantially similar in overall look and feel to the website and customization programs of Plaintiff or that copy Plaintiff's selection, arrangement, and coordination of products, displays and other elements;

(b)      imitating, copying, or making unauthorized use of the Website Trade Dress and Packaging Trade Dress, including, without limitation, by reproducing, importing, displaying, advertising, or promoting any website or packaging bearing the Website Trade Dress or Packaging Trade Dress, respectively, or any other design that is confusingly similar to the Website Trade Dress or Packaging Trade Dress;

(c)      using any false designation of origin or false description or performing any act that can or is likely to lead members of the trade or public to believe that Defendants are associated with Plaintiff or that any product manufactured, distributed, advertised, displayed, promoted, offered for sale, sold, imported, or exported by Defendants is in any manner associated or connected with Plaintiff, or is authorized, licensed, sponsored, or otherwise approved by Plaintiff;

(d)      infringing the CROWN AWARDS mark, including but not limited to use as a keyword for advertising;

(e)      using the CROWN AWARDS mark, or any derivation or colorable imitation thereof, or any name or mark that is confusingly similar to the CROWN AWARDS mark, on or in connection with Defendants' goods or services;

(f)      using any false or misleading representations of fact, or performing any act, which can, or is likely to, lead members of the trade or public to hold false beliefs concerning the nature, qualities, or characteristics of Defendants' goods or services;

(g)      engaging in any other activity constituting unfair competition with Plaintiff or false advertising, or constituting an infringement of Plaintiff's copyrights or trade dresses; and

(h)      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (g) above or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (g) above.

2.   Directing that Defendants turn over to Plaintiff for impoundment and eventual destruction or other disposition, without compensation to Defendants, all materials in their possession or control that violate the provisions of paragraphs 1(a)-(h) above, along with all articles by means of which such unauthorized copies may be reproduced.

3.   Directing that Defendants, at their own expense, recall from any distributors, retailers, vendors, or others to whom it has distributed materials that violate the provisions of paragraph 1(a)-(h) above, and that Defendants deliver up to Plaintiff for destruction or other disposition all materials returned to them.

4.   Directing that Defendants, pursuant to 15 U.S.C. § 1116(a), file with the Court and serve upon Plaintiff, within thirty (30) days of the entry of injunction prayed for herein, a written report under oath or affirmed under penalty of perjury setting forth in detail the form and manner in which it has complied with the permanent injunction.

5.   That Plaintiff be awarded monetary relief, including Defendants' profits, as provided by 17 U.S.C. § 504(b), or statuary damages as Plaintiff may elect as provided by 17 U.S.C. § 504(c).

6.   That Plaintiff be awarded monetary relief, including Defendants' profits, trebled or increased as provided by 15 U.S.C. § 1117(a); and punitive, exemplary or enhanced damages as provided for under applicable law.

7.   Granting Plaintiff its full costs, including, as part of such costs, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and/or 17 U.S.C. § 505;

8.   That Plaintiff be awarded interest, including pre-judgment interest, on the foregoing sums.

9.   That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

Dated:  February 18, 2015                    FROSS ZELNICK LEHRMAN & ZISSU, P.C.

By _____
                                             Richard Lehv
                                             Emily Weiss
                                             866 United Nations Plaza
                                             New York, New York 10017
                                             Tel: (212) 813-5900
                                             *rlehv@frosszelnick.com*
                                             *eweiss@frosszelnick.com*

                                             *Attorneys for Plaintiff*