UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

CROWN AWARDS, INC.,                              :

               Plaintiff,            :            15 Civ. 1178 (LAK) (AJP)

         -against-                   :            **REPORT & RECOMMENDATION**

TROPHY DEPOT, INC., JAMES O'BOYLE and:
HOWARD BECKER,
                                                 :

            Defendants.
                                                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Lewis A. Kaplan, United States District Judge:**

           Plaintiff Crown Awards, Inc. ("Crown") filed this action against defendants Trophy

Depot, Inc., James O'Boyle, and Howard Becker (collectively "Trophy Depot") alleging copyright,

trademark and trade dress infringement, as well as false advertising.  (See generally Dkt. No. 1:

Compl.; Dkt. No. 18: 1st Am. Compl.)  On May 12, 2016, Crown filed a notice of voluntary

dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (Dkt. No.

82: Not. of Dismissal.)  Presently before the Court is Trophy Depot's post-dismissal motion seeking

sanctions against Crown and its former law firm pursuant to the Court's inherent authority and 28

U.S.C. § 1927.[1]  (Dkt. No. 87: Defs.' Mot. for Sanctions.)

           For the reasons set forth below, Trophy Depot's sanctions motion should be __DENIED__.

---

[1]      The Court may rule on this motion despite Crown's voluntary dismissal because district
courts have "jurisdiction to impose sanctions irrespective of the status of the underlying case
because the imposition of sanctions is an issue collateral to and independent from the
underlying case."  Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 333 (2d Cir.
1999) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-96, 110 S. Ct. 2447,
2455-56 (1990)).

## FACTS

Crown and Trophy Depot are competitors in the award, medal and trophy sales industry. (Dkt. No. 18: 1st Am. Compl. ¶¶ 14, 57.)  In December 2014, Crown approached the law firm of Fross Zelnick Lehrman & Zissu ("FZLZ") seeking representation for a suit against Trophy Depot concerning, inter alia, infringement of Crown's copyrighted award and trophy designs.  (Dkt. No. 110: Lehv Aff. ¶ 15.)[2/]  In January 2015, FZLZ partner Richard Lehv and an associate met with Crown's principals—Elyse Weisenfeld, Chuck Weisenfeld, and Lori Rubin—and one of Crown's designers—Erin Andrews—to discuss which of Crown's copyrighted award designs allegedly infringed by Trophy Depot should be included in the suit.  (Id. ¶ 17.)  Prior to and during the January 2015 meeting, Crown's representatives stated "that Crown's designers had designed all of the works at issue in the case." (Id. ¶¶ 16-17.)

Crown filed its complaint in this action on February 18, 2015 (Dkt. No. 1: Compl.) and filed an amended complaint three months later (see generally 1st Am. Compl.).  The majority of Crown's allegations concerned Trophy Depot's infringement of around two hundred of Crown's copyrighted award and trophy designs.  (See, e.g., 1st Am. Compl. ¶¶ 1, 3-4, 14-15, 17-18, 22-31, 62-86, 111-231.)  Crown also alleged that Trophy Depot infringed Crown's copyrighted "Trophy Builder" and "Engraving Engine" web applications (id. ¶¶ 232-53), Crown's copyrighted website design (id. ¶¶ 254-64), Crown's 2014 catalog (id. ¶¶ 265-75), Crown's website and packaging trade dress (id. ¶¶ 276-83, 295-98), Crown's trademark (id. ¶¶ 284-87), and that Trophy Depot engaged

---

[2/]     Crown and FZLZ's relationship predated this litigation.  Beginning in 2005, FZLZ provided Crown with legal counseling on filing copyright registrations for its trophy designs.  (Lehv Aff. ¶ 12.)  In 2007, FZLZ successfully represented Crown in a copyright infringement suit against another of Crown's competitors.  (Id.)  The 2007 litigation provided no reason to question the credibility of Crown's principals or employees.  (Id.)

in false advertising by claiming to provide "Same Day Shipping" (id. ¶¶ 288-94, 299-302).

Trophy Depot asserts that "in every copyright case, the role of defense counsel is to discover any evidence of the use of prior art" incorporated in the allegedly copyrighted works so that the strength and extent of the plaintiff's copyright can be ascertained.  (Dkt. No. 122: Trophy Depot Reply to Crown Br. at 7-8.)  In February 2016, Trophy Depot notified Crown that Trophy Depot would seek "discovery concerning . . . the conception, design, and creation of [Crown's] products including, without limitation, elements of the same that were appropriated, licensed and/or copied from third parties."  (Dkt. No. 51: Joint Rule 26(f) Report at 2; see also Lehv Aff. ¶ 28.)  Simultaneously, "from early in the case, [Trophy Depot] undertook an independent search aimed at identifying as many source images as possible that were clearly incorporated into Crown's designs."  (Dkt. No. 88: Trophy Depot Br. at 6.)

Trophy Depot served Crown with interrogatories in mid-February 2016.  (Lehv Aff. ¶ 34.)  "Interrogatory No. 1 requested the identification of 'all persons involved in any way in the design of any of [Crown's] Products.'"  (Id.)  Ms. Weisenfeld told Lehv "that the only persons involved in the design of [Crown's] products were [Lori] Rubin, [Eric] Diamond, and [Erin] Andrews."  (Id.)  "Interrogatory No. 2 requested the identification of 'all persons involved in any way in the in-bound licensing of any design or image . . . incorporated into any of [Crown's] Products."  (Id.)  Ms. Weisenfeld told Lehv that this question was "not applicable" (id.), and FZLZ thus responded that Crown "does not license any design or image incorporated into any of [its] Products" (Lehv Aff. Ex. 6: Pls.' Resps. & Objs. To Defs.' 1st Set of Interrogs., Interrog. No. 2; see also Lehv Aff. ¶ 34).  These interrogatory responses, which were signed by Ms. Weisenfeld, formed the basis for similar responses to Trophy Depot's requests for admission.  (Lehv Aff. ¶ 35; see also, e.g., Dkt. No. 92-16: Hodas Aff. Ex. 13: Pls' Resps & Objs. To Defs.' 1st Set of Admiss. ¶¶ 66-68.)

On April 14, 2016, Trophy Depot produced stock photographs and clip art which it alleged had been used in the creation of thirteen of Crown's awards at issue in the suit.  (Lehv Aff. ¶¶ 36, 43; Dkt. No. 92: Hodas Aff. ¶ 4; see generally Dkt. No. 92-4: 4/14/2016 Produc.)  On April 18, 2016, Mr. and Ms. Weisenfeld, Lori Rubin, Eric Diamond, and Erin Andrews met with Lehv to discuss the April 14 production.  (Lehv Aff. ¶ 40.)  At the meeting, Lehv attempted to discern who designed each award at issue in the litigation, as well as the design process for those awards.  (Id. ¶ 41.)  Crown's representatives "could not identify who had designed a number of the awards at issue in the litigation, including most of the awards questioned by" Trophy Depot's April 14 production. (Id. ¶ 42.)  "[B]oth Ms. Andrews and Mr. Diamond denied incorporating any stock photographs or clip art in their designs."  (Id. ¶ 41.)  Crown's representatives told Lehv that Crown "has employed numerous interns over the years, and it was possible that some of the [designs] at issue had been designed by the interns, who could have used stock photographs or clip art without authorization." (Id. ¶ 42.)

Eric Diamond, Crown's creative director and one of its product designers, was deposed on April 19, 2016.  (Lehv Aff. ¶ 40; Dkt. No. 121-9: Diamond Dep. at 1, 5.)  Diamond testified that in addition to him, Crown employed only "one other designer"—Erin Andrews. (Diamond Dep. at 21-22, 37, 119.)  He also testified that he did not "use" or "employ" clip art in his designs (see id. at 22, 72), but admitted to occasionally referencing photographs found on the internet during the design process (see, e.g., id. at 120, 141, 148, 152).

Lori Rubin, Crown's co-owner and marketing director, was deposed on April 20, 2016.  (Lehv Aff. ¶ 40; Dkt. No. 121-10: Rubin Dep. at 1, 7-8.)  Rubin agreed that Eric Diamond and Erin Andrews were the only two designers at Crown (Rubin Dep. at 18-19), but stated that some designs at issue could have been designed by interns (id. at 18-19, 122).  Rubin insisted that all of

Crown's designs were "original" (id. at 28, 32, 34-35, 174)—defined during her deposition as meaning "designed without reference to any outside [or] . . . third-party design" (id. at 60-61)—and denied that any of the designs at issue "include[d] images taken from Clipart" or "from any third-party" (id. at 62-63).  She also stated that Crown "[p]ossibly" had clipart licenses (id. at 62-63), but stated that she was not "aware of any other licenses that Crown has with respect to artwork" (id. at 124-25).

Elyse Weisenfeld, Crown's co-owner, was deposed on April 21, 2016.  (Lehv Aff. ¶ 40; Dkt. No. 92-63: Elyse Weisenfeld Dep. at 1.)  Ms. Weisenfeld testified that Eric Diamond and Erin Andrews were Crown's "key designers," but that Crown also "ha[s] interns that come and go." (Id. at 19, 21.)  She could not recall any designers besides Diamond, Andrews and the possible interns.  (Id. at 83.)  She was not aware of any licenses for third-party images and artwork, including clipart.  (Id. at 39-40.)  With respect to one award design at issue, Ms. Weisenfeld testified that it could not have incorporated a Shutterstock image because "our designers designed" the award (id. at 113) and "our artists are instructed to design medals from scratch" (id. at 115).

On May 9, 2016, FZLZ held another meeting with Mr. and Ms. Weisenfeld, Rubin, and Erin Andrews.  (Lehv Aff. ¶ 52.)  "During the meeting, Ms. Andrews denied [Trophy Depot's] accusation that she had incorporated third-party clip art or stock photographs into various awards. [Crown's] representatives also said that they did not know who designed many of the awards about which" Trophy Depot had complained in its April 14 and April 20 productions.  (Id. ¶ 53.)

On May 10, 2016, pursuant to Trophy Depot's subpoena, the non-party stock photograph and clipart service Shutterstock produced records indicating that Crown had an active account with Shutterstock for thirteen months over a ten-year period, during which Crown had downloaded over 6,000 images.  (Hodas Aff. ¶¶ 8-9.)

Erin Andrews was deposed on May 10, 2016. (Lehv Aff. ¶ 54; Dkt. No. 121-8: Andrews Dep. at 1.)  She testified that she and Eric Diamond were Crown's only designers. (Andrews Dep. at 51.)  She did not know whether Crown hired interns and stated that she had never seen an intern during her work with Crown.  (Id. at 46-47.)  She insisted she had never "taken any clip art from Shutter Stock to use in connection with any Crown Awards design," nor had she "ever used any clip art from any third party whatsoever in the creation of any Crown Awards design."  (Id. at 14-15.)  She stated that, to her knowledge, Crown did not possess a license with Shutterstock or for clip art provided by any other third-party licensor.  (Id.)  When confronted with Shutterstock's recent production indicating that Crown had a Shutterstock account, Andrews stated that the production did not refresh her recollection as to whether Crown had a Shutterstock license.  (Id. at 139-42.)

On May 11, 2016, Lehv called Ms. Weisenfeld and "communicated [his] concerns" regarding "the similarity between the clip art and stock photographs produced by [Trophy Depot] and several elements in some of the Crown awards." (Lehv Aff. ¶ 55.)  On the evening of May 11, Lehv and an FZLZ associate met with Crown's principals at Crown's office.[3]  (Lehv Aff. ¶ 56.)  During that meeting, Crown's principals for the first time told FZLZ that Crown employed a third designer named Valerie Bizzarro.  (Id.)  They also admitted that Crown did have a Shutterstock account "and had maintained an internal database of Shutterstock images over a period of years." (Id.)  "Ms. Bizzarro and Ms. Andrews then joined the  meeting" and revealed that Bizzarro had

---

[3]     Lehv's declaration does not state at what time in the evening this meeting occurred.  (See Lehv Aff. ¶ 56.)

designed several of the awards at issue[4] and "had used certain of the stock photographs and clip art identified by [Trophy Depot] in developing some of those designs." (Lehv Aff. ¶ 57.)  Andrews similarly admitted "that she had used reference materials for some of the awards she had designed." (Id.)

On March 11, 2016, at 7:06 p.m., Lehv emailed Trophy Depot's counsel requesting consent to file "an amendment to the complaint that might simplify the case"; the amendment would "not add[] any new theories." (Dkt. No. 121-3: Lehv 5/11/16 Email; see Dkt. No. 121-4: Lehv 5/12/16 Email chain.)  At 12:20 p.m. the next day—May 12, 2016—Lehv sent a follow-up email seeking a response from Trophy Depot's counsel.  (Lehv 5/12/16 Email.)  An hour later, Trophy Depot's counsel emailed that Trophy Depot would not consent to Lehv's request and implied that it would seek sanctions against Crown and FZLZ for "continu[ing] to press a case that you unquestionably now know is built upon false information that [Crown] has advanced." (Dkt. No. 121-5: Trophy Depot 5/12/16 Email.) The email continued: "We suggest you focus on addressing how to end this case without any further, unnecessary devotion of client resources and judicial resources, and with an eye toward making [Trophy Depot] whole." (Id.)  Lehv's affidavit in response to Trophy Depot's sanctions motion does not mention the May 11-12 emails.  (See generally Lehv Aff. ¶¶ 55-60.)

Lehv asserts that on the morning of May 12, 2016, he "reviewed the deposition transcripts of all of [Crown's] witnesses, as well as [Crown's] discovery responses, to consider the accuracy of such testimony and discovery responses." (Id. ¶ 58.)  "That same morning of May 12, [Lehv] called Ms. Weisenfeld and told her that [FZLZ] could no longer represent [Crown] in this

---

[4]    According to Rubin, Bizzarro designed four of the thirteen awards identified by Trophy Depot as having been derived from prior art.  (See Dkt. No. 114: Rubin Aff. ¶ 18.)

lawsuit." (Id. ¶ 60.)  Lehv provided Crown with an ultimatum: either FZLZ would have to correct

the record as to each of Crown's untrue statements, or Crown could voluntarily dismiss its case.

(Id.)  Crown chose the latter option, and on May 12, 2016, at 5:32 p.m., FZLZ filed a notice of

voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  (Lehv Aff. ¶ 60;

Dkt. No. 82: Not. of Dismissal.)

    In opposition to Trophy Depot's sanctions motion, Crown submitted affidavits from

Rubin and Andrews admitting to having concealed the existence of Valerie Bizzarro.[5/]  (Dkt. No.

113: Andrews Aff. ¶¶ 17-18; Dkt. No. 114: Rubin Aff. ¶¶ 18-20.)  Crown also admitted concealing

Bizzarro's identity from FZLZ.  (Rubin Aff. ¶¶ 18-19.)  Moreover, contrary to Andrews' deposition

testimony that she does not "ever use[] any clip art from any third party whatsoever in the creation

of any Crown Awards design" (see page 6 above), she now admits in her affidavit that she "should

have answered that, from time to time [she] did use photographs or other images as a starting point

or reference for some of the elements of [her] designs" (Andrews Aff. ¶ 11; see also id. ¶¶ 8, 10).

Although Andrews testified that, to her knowledge, Crown did not possess a "license" with

Shutterstock (see page 6 above), her affidavit states that she "[o]f course . . . knew that we had a

database with images downloaded from Shutterstock" (Andrews Aff. ¶ 16).  And despite her

deposition testimony that she did not know whether Crown hired interns (see page 6 above),

Andrews' affidavit states that she "recall[s] one or two individuals identified as 'interns'" (Andrews

Aff. ¶ 17).

    Similarly, although Rubin testified at her deposition that some designs at issue in the

case could have been designed by interns (see page 4 above), she states in her affidavit that "one

---

[5/] Although Ms. Weisenfeld and Mr. Diamond likely joined in concealing Bizzarro's existence
(see pages 4-5 above), they did not submit any affidavits.

such individual has now been identified as the author of twenty-three of the designs at issue in this suit when she worked as an intern [for Crown] during the summers of 2011 and 2012." (Rubin Aff. ¶ 9.)  Contrary to her deposition testimony that Crown's awards are designed without reference to any outside design (see pages 4-5 above), Rubin's affidavit states that her answer to such questions "should have been that . . . clip art and other images from time to time are used by [Crown's] artists as a reference" (Rubin Aff. ¶ 16).

## ANALYSIS

## I.    SANCTIONS ARE NOT APPROPRIATE UNDER THE COURT'S INHERENT AUTHORITY OR 28 U.S.C. § 1927

"[A] federal court . . . may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Ransmeier v. Mariani, 718 F.3d 64, 68 (2d Cir. 2013).[6/]  "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Chambers v. NASCO, Inc., 501 U.S. at 43-44, 111 S. Ct. at 2132; accord, e.g., Ransmeier v. Mariani, 718 F.3d at 68 (The Court's "authority to impose sanctions is grounded, first and foremost, in [its] inherent power to control the proceedings that take place before [it]").  "Because of their very potency, inherent powers must be exercised with restraint and

---

[6/]    Accord, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 43, 111 S. Ct. 2123, 2132 (1991) ("'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.'"); Caldwell v. Pesce, 639 F. App'x 38, 39 (2d Cir.), cert. denied, 137 S. Ct. 307 (2016); Eisemann v. Greene, 204 F.3d 393, 395 (2d Cir. 2000) (per curiam) ("Under its inherent powers to supervise and control its own proceedings, a district court has the authority to award attorney's fees to the prevailing party when the losing party 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"); Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999); Kennedy v. City of N.Y., 12 Civ. 4166, 2016 WL 3460417 at *2 (S.D.N.Y. June 20, 2016).

discretion." <u>Chambers</u> v. <u>NASCO, Inc.</u>, 501 U.S. at 44, 111 S. Ct. at 2132; <u>cf.</u> <u>United States</u> v. <u>Seltzer</u>, 227 F.3d 36, 41 n.2 (2d Cir. 2000) ("[T]he threshold finding required to justify sanctions under the inherent powers doctrine is 'extremely high.'").

Under 28 U.S.C. § 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[7]   "Section 1927 authorizes the imposition of sanctions when 'there is a clear showing of bad faith on the part of an attorney.'" <u>Schlaifer Nance & Co.</u> v. <u>Estate of Warhol</u>, 194 F.3d at 336.[8]  "Section 1927, though, should be construed narrowly and with great caution, so as not to stifle zealous advocacy." <u>Arclightz & Films Pvt. Ltd.</u> v. <u>Video Palace, Inc.</u>, 01 Civ. 10135, 2003 WL 22434153 at *7 (S.D.N.Y. Oct. 24, 2003) (quotations & fn. omitted).[9]  "Furthermore, even where the statutory

---

[7]    "[A]wards pursuant to § 1927 may be imposed only against the offending attorney; clients may not be saddled with such awards." <u>United States</u> v. <u>Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO</u>, 948 F.2d 1338, 1345 (2d Cir. 1991); <u>see also</u>, <u>e.g.</u>, <u>Schlaifer Nance & Co.</u> v. <u>Estate of Warhol</u>, 194 F.3d at 336 ("[I]n practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys . . . while an award made under the court's inherent power may be made against an attorney, a party, or both.'"); <u>Rates Tech. Inc.</u> v. <u>Broadvox Holding Co.</u>, 56 F. Supp. 3d 515, 527 (S.D.N.Y. 2014).

[8]    <u>Accord</u>, <u>e.g.</u>, <u>Zurich Am. Ins. Co.</u> v. <u>Team Tankers A.S.</u>, 811 F.3d 584, 591 (2d Cir. 2016); <u>Rates Tech. Inc.</u> v. <u>Broadvox Holding Co.</u>, 56 F. Supp. 3d at 526-27; <u>Davey</u> v. <u>Dolan</u>, 453 F. Supp. 2d 749, 757 (S.D.N.Y. 2006), <u>aff'd</u>, 292 F. App'x 127 (2d Cir. 2008); <u>see also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL–CIO</u>, 948 F.2d at 1345 ("By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics.").

[9]    <u>Accord</u>, <u>e.g.</u>, <u>Zen Cont'l Co.</u> v. <u>Intercargo Ins. Co.</u>, 151 F. Supp. 2d 250, 265 (S.D.N.Y. 2001), <u>aff'd</u>, 25 F. App'x 65 (2d Cir. 2002); <u>see also</u>, <u>e.g.</u>, <u>Schlaifer Nance & Co.</u> v. <u>Estate of Warhol</u>, 194 F.3d at 341 ("On the one hand, a court should discipline those who harass
(continued...)

standard is met, § 1927 by its terms ('may be required') confides an award of fees against counsel to the Court's discretion." Arclightz & Films Pvt. Ltd. v. Video Palace, Inc., 2003 WL 22434153 at *7 (quotations omitted); accord, e.g., Sorenson v. Wolfson, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016) ("The Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent authority.").

Trophy Depot asserts two bases on which to levy sanctions on Crown and/or FZLZ under the Court's inherent authority and § 1927: first, that Crown and FZLZ engaged in a "campaign of fraud on the Copyright Office" and then in this action pursued colorless copyright claims in bad faith (see Dkt. No. 88: Trophy Depot Br. at 1, 2, 23-27); second, that the untrue statements made by Crown's witnesses during discovery and FZLZ's failure to more quickly correct the record constituted fraud on the court (see Trophy Depot Br. at 12-23). The Court addresses these bases in turn.

### A.   Trophy Depot's Fraud on the Copyright Office/Colorless Claims Arguments Do Not Justify Sanctions

When a party or attorney acting in bad faith pursues claims, theories or arguments that are entirely colorless, the Court may impose sanctions under its inherent authority or 28 U.S.C. § 1927. Eisemann v. Greene, 204 F.3d 393, 396 (2d Cir. 2000) ("To impose sanctions under either [§ 1927 or the court's inherent authority], a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is,

---

9/   (...continued)
their opponents and waste judicial resources by abusing the legal process. On the other hand, in our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules.").

'motivated by improper purposes such as harassment or delay.'")[10]/  To impose such sanctions, there must be "clear evidence" of bad faith and that the claims are colorless, Eisemann v. Greene, 204 F.3d at 396,[11]/ "supported by a high degree of specificity in the [court's] factual findings," Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir.), cert. denied, 558 U.S. 1037, 130 S. Ct. 625 (2009).[12]/

### 1.    Crown's Claims are Not Colorless

[A] claim is entirely without color when it lacks any legal or factual basis. Conversely, a claim is colorable when it has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim.  The question is whether a reasonable attorney—and for our immediate purposes, a reasonable plaintiff as well—could have concluded that facts supporting the claim might be established, not whether such facts actually had been established.  Thus, as

---

[10]/   Accord, e.g., Ransmeier v. Mariani, 718 F.3d 64, 69 (2d Cir. 2013) ("Frivolous arguments with regard to a motion—particularly where that frivolousness is coupled with inappropriate conduct that suggests the attorney was motivated by bad faith—may also merit the imposition of sanctions by this Court."); Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999) ("As with sanctions imposed pursuant to a court's inherent power, in the § 1927 context, bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'"); Sorenson v. Wolfson, 170 F. Supp. 3d 622, 633 (S.D.N.Y. 2016); Kennedy v. City of N.Y., 12 Civ. 4166, 2016 WL 3460417 at *2 (S.D.N.Y. June 20, 2016); Rates Tech. Inc. v. Broadvox Holding Co., 56 F. Supp. 3d 515, 526-27 (S.D.N.Y. 2014); see also, e.g., Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 178 (2d Cir. 2012) ("[W]hile the standard for triggering sanctions under Rule 11 is 'objective unreasonableness,' to impose sanctions under § 1927, the court must make a finding of 'conduct constituting or akin to bad faith.'" (citation omitted)).

[11]/   Accord, e.g., Sorenson v. Wolfson, 170 F. Supp. 3d at 633 ("'To impose sanctions under either [§ 1927 or the court's inherent authority], the trial court must find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party acted for improper purposes.'" (emphasis added)); Kennedy v. City of N.Y., 2016 WL 3460417 at *2; Rates Tech. Inc. v. Broadvox Holding Co., 56 F. Supp. 3d at 526-27.

[12]/   Accord, e.g., Mitchell v. Lyons Prof'l Servs., Inc., 708 F.3d 463, 467 (2d Cir. 2013); Eisemann v. Greene, 204 F.3d at 396; Fertitta v. Knoedler Gallery, LLC, 14 Civ. 2259, 2015 WL 3824727 at *2 (S.D.N.Y. June 19, 2015).

> an initial matter, we note that a claim that fails as a matter of law is not necessarily lacking any basis at all.  A claim is colorable when it reasonably might be successful, while a claim lacks a colorable basis when it is utterly devoid of a legal or factual basis.

Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 337 (2d Cir. 1999) (quotations & citations omitted).[13/]

The thrust of Trophy Depot's argument is that Crown's copyright claims are entirely colorless because its copyrights arose from fraud on the Copyright Office.  (See Dkt. No. 88: Trophy Depot Br. at 2, 9-11.)  Even if that were true,[14/] it is not a basis for the Court to sanction Crown, or its counsel, on this record.  "Registering a copyright with the Copyright Office creates a rebuttable presumption that the copyright is valid[,] [b]ut a defendant in a copyright infringement case may claim fraud on the Copyright Office as a defense to rebut that presumption of validity."  Kwan v. Schlein, 05 Civ. 0459, 2008 WL 4755345 at *2 (S.D.N.Y. Oct. 30, 2008) (citations omitted).  In the Second Circuit, "[o]nly the 'knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application [submitted to the Copyright Office] constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action.'"  Eckes v. Card Prices Update, 736 F.2d 859, 859 (2d Cir. 1984) (emphasis added).  Trophy Depot's

---

[13/]  Accord, e.g., Enmon v. Prospect Capital Corp., 675 F.3d 138, 143 (2d Cir. 2012); Dorchester Fin. Holdings Corp. v. Banco BRJ, S.A., 11 Civ. 1529, 2016 WL 2944685 at *3 n.2 (S.D.N.Y. May 19, 2016); Rates Tech. Inc. v. Broadvox Holding Co., LLC, 56 F. Supp. 3d 515, 527 (S.D.N.Y. 2014)

[14/]  Trophy Depot's "proof" is based on thirteen to twenty-one of the two hundred copyrighted designs at issue in this case.  (Compare Trophy Depot Br. at 6-7, with Dkt. No. 18: 1st Am. Compl. ¶¶ 1, 3-4, 14-15, 17-18, 22-31, 62-86, 111-231.)  While Trophy Depot blithely asserts that "Defendants are certain that, time permitting, it would be possible to prove that in virtually every case, Crown's copyrighted designs were, in fact, substantially derivative of art from some third-party source" (Trophy Depot Br. at 8), that belief is not the "clear evidence" required for sanctions (see cases cited at page 12 & n.11 above).

conclusory assertions that "Crown knew that the information it was providing to the Copyright Office . . . was false" do not constitute any evidence, much less "clear evidence," to that effect. (See generally Trophy Depot Br. at 9-11.)

Trophy Depot also argues that all of Crown's copyright infringement claims were "untenable" under the "merger doctrine" because those claims were focused on the similarity of the ideas in Crown's and Trophy Depot's products, rather than the expression of those ideas. (See Trophy Depot Br. at 24-25.) The "'merger doctrine' instructs that some ideas can only be expressed in a limited number of ways—single words or colors for example. When expression is so limited, idea and expression 'merge.' Expressions merged with ideas cannot be protected, lest one author own the idea itself." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 102-03 (2d Cir. 2014). Trophy Depot further argues that the Crown designs identified by Trophy Depot as derived from prior art were not copyrightable (see Dkt. No. 122: Trophy Depot Reply to Crown Br. at 7-8), or that those designs could not serve as a basis for an infringement claim (see page 23 n.29 below).

These arguments cannot be decided on the limited record of this motion for sanctions. The Second Circuit has recognized, for example, that "[d]etermining when the idea and its expression have merged is a task requiring considerable care." Kregos v. Associated Press, 937 F.2d 700, 705 (2d Cir.1991); accord, e.g., Sparaco v. Lawler, Matusky, Skelly Eng'rs LLP, 60 F. Supp. 2d 247, 252 (S.D.N.Y. 1999) ("As the Second Circuit has noted, the merger doctrine is difficult to apply."). The use of third-party images in Crown's designs, moreover, is at base an argument regarding originality. (See page 23 n.29 below.) "[T]he requisite level of creativity" to qualify as original "is extremely low," Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345, 111 S. Ct. 1282, 1287 (1991), thus potentially necessitating a determination of whether the original elements in Crown's designs are substantially similar to Trophy Depot's—a point Trophy Depot appears to

concede (see Trophy Depot Reply to Crown Br. at 7-8).  And both originality and substantial similarity are questions of fact typically reserved for trial.  See, e.g., Zalewski v. Cicero Builder Dev., Inc., 754 F.3d at 102 n.12 ("[B]ecause substantial similarity is a fact-intensive question, it is generally an issue reserved for a jury."); Solovsky v. Delta Galil USA, 135 F. Supp. 3d 196, 214 (S.D.N.Y. 2015) ("The originality of a copyrighted work is ordinarily a question of fact to be decided at trial.").

Similarly, Trophy Depot's arguments regarding the merits of Crown's trade dress and trademark claims cannot be decided on this motion.  The record and the parties' legal arguments are insufficiently developed to determine whether Crown's blue satin-lined box is sufficiently "distinctive" to merit protection.  See, e.g., Bobcar Media, LLC v. Aardvark Event Logistics, Inc., 16 Civ. 885, 2017 WL 74729 at *7 (S.D.N.Y. Jan. 4, 2017) (determining whether a non-inherently distinctive trade dress merits protection requires fact-intensive, six-factored analysis).  With respect to Crown's trademark claim (based on Trophy Depot's purchase of "Crown Awards" as a Google AdWord), Crown notes (see Dkt. No. 111: Crown Opp. Br. at 30) that Trophy Depot itself cites (see Trophy Depot Br. at 26) a recent case that found a trademark infringement claim based on the defendant's purchase of the plaintiff's trademark as a Google AdWord search term was sufficiently meritorious to support a preliminary injunction.  See CJ Prods. LLC v. Snuggly Plushez LLC, 809 F. Supp. 2d 127, 157-61 (E.D.N.Y. 2011).  And notably, Trophy Depot makes no argument regarding Crown's website and web application infringement claims, or its false advertising claim. (See generally Trophy Depot Br. at 23-27.)  Clearly, some of Crown's claims are not claimed by Trophy Depot to be entirely colorless.

Most importantly, Trophy Depot's perfunctory arguments reviewed above do not approach a showing that Crown's claims, copyright or otherwise, were "utterly devoid of a legal or

factual basis."  Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d at 337.  To the contrary, the

parties' briefing on these claims suggests, at the very least, that Crown's claims were sufficiently

colorable to defeat this basis for sanctions.  (See Trophy Depot Br. at 23-27; Crown Opp. Br. at 29-

30.)[15]

### 2.    Crown And FZLZ Did Not Commence This Action In Bad Faith

Actions are taken in bad faith when they are "motivated by improper purposes such

as harassment or delay."  Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir.

1999).[16]  "Bad faith can be inferred when the actions taken are 'so completely without merit as to

require the conclusion that they must have been undertaken for some improper purpose.'"  Schlaifer

Nance & Co. v. Estate of Warhol, 194 F.3d at 338.[17]

"[T]he bad faith requirement has been interpreted 'restrictively.'"  Scrilla Hill Entm't

Inc. v. Dupree, 16 Civ. 490, 2016 WL 5817064 at *4 (S.D.N.Y. Oct. 5, 2016) (quoting Eisemann

v. Greene, 204 F.3d at 396); accord, e.g., Martin v. Giordano, 185 F. Supp. 3d 339, 354 (E.D.N.Y.

2016) ("[T]he bad faith standard is interpreted stringently.").  Setting a high bar for a finding of bad

faith "'ensure[s] . . . that fear of an award of attorneys' fees against them will not deter persons with

---

[15]    The fact that Crown's claims were not completely colorless renders moot (for the purposes
of this motion) the question whether FZLZ engaged in adequate pre-filing investigation.
(See Trophy Depot Br. at 27; Dkt. No. 122: Trophy Depot Reply to FZLZ Br. at 2-3; Crown
Opp. Br. at 5-7, 24-27.)

[16]    Accord, e.g., In re Khan, 593 F. App'x 83, 85 (2d Cir. 2015); Eisemann v. Greene, 204 F.3d
393, 396 (2d Cir. 2000); Rates Tech. Inc. v. Broadvox Holding Co., 56 F. Supp 3d 515, 526-
27 (S.D.N.Y. 2014).

[17]    Accord, e.g., Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016);
Eisemann v. Greene, 204 F.3d at 397 ("It is sometimes possible to infer bad faith from the
meritlessness of a motion.").

colorable claims from pursuing those claims.'"  Eisemann v. Greene, 204 F.3d at 396.[18/]

Since Crown's filings were not entirely colorless, the Court cannot infer bad faith.  (See pages 12-16 above.)  But even if Crown's pleadings were colorless, the record does not contain clear evidence that would permit the Court to find bad faith with the requisite "high degree of specificity" required to impose sanctions.  See, e.g., Wolters Kluwer Fin. Servs., Inc. v. Scivantage, 564 F.3d 110, 114 (2d Cir. 2009); see also cases cited at page 12 n.12 above.  Indeed, the actions in which Trophy Depot appears to find the clearest implication of bad faith—e.g., attorney Lehv's request to amend the complaint in order to "simplify" the case and Crown's subsequent voluntary dismissal (see Dkt. No. 88: Trophy Depot Br. at 23; Dkt. No. 122: Trophy Depot Reply to FZLZ Br. at 1, 7)—are neither harassing nor dilatory.

Trophy Depot asserts that FZLZ was required to disclose Crown's deceptions rather than (or in addition to) dismiss the case.  (Trophy Depot Reply to FZLZ Br. at 1, 7-8.)  But under New York Rule of Professional Conduct ("NYRPC") 3.3(a)(3), and the competing obligations of NYRPC 1.6,[19/] FZLZ was required to disclose Crown's deceptions only "if necessary" and only in the absence of any other remedial measures.  See N.Y. Eth. Op. 837 (Mar. 16, 2010) ("Disclosure of the falsity, however, is required only 'if necessary.'  Moreover, because counsel's knowledge constitutes confidential information under Rule 1.6, and does not fall within any of the exceptions contained in Rule 1.6(b), if disclosure is not 'necessary' under Rule 3.3, it would also not be permitted under Rule 1.6.  Therefore, if there are any reasonable remedial measures short of

---

[18/]  See also, e.g., Sorenson v. Wolfson, 170 F. Supp. 3d 622, 633 (S.D.N.Y. 2016) ("Section 1927 'is not a catch-all provision designed to penalize attorneys for making bad arguments.'").

[19/]  The New York Rules of Professional Conduct are compiled in N.Y. Comp. Codes R. & Regs. tit. 22 § 1200.0.

disclosure, that course must be taken.").[20/]  Trophy Depot cites no authority affirmatively stating that dismissal is not a reasonable remedial measure (see Trophy Depot Reply to FZLZ Br. at 7-8) and, in any event, proffers no clear evidence that FZLZ dismissed the case in bad faith.

In the absence of clear evidence sufficient to permit a finding of bad faith with a high degree of specificity, the Court cannot impose sanctions on the basis of Crown's and FZLZ's claims, theories, and/or arguments.  See, e.g., Rates Tech. Inc. v. Broadvox Holding Co., 56 F. Supp. 3d at 529 ("[A]bsent clear evidence with a high degree of specificity, [the Court] cannot impose sanctions."); MacDraw, Inc. v. CIT Group Equip. Fin., Inc., 73 F.3d 1253, 1262 (2d Cir. 1996) (vacating imposition of sanctions where "[t]he district court engaged in no detailed consideration of what conduct by plaintiff's counsel satisfied the bad faith requirement of § 1927").

### B.   Trophy Depot's Deposition Perjury/Fraud on the Court Argument Does not Justify Sanctions

Trophy Depot asserts that Crown's witnesses' perjury at their depositions, and FZLZ's failure to more quickly correct the record, constituted fraud on the court.  (Dkt. No. 88: Trophy Depot Br. at 12-23.)

"A Court has the inherent authority to sanction a party for committing a fraud on the court."  Bravia Capital Partners Inc. v. Fike, 09 Civ. 6375, 2015 WL 1332334 at *3 (S.D.N.Y. Mar. 25, 2015);[21/] see also, e.g., Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07

---

[20/]   Rule 1.6(b)(5) allowed FZLZ to disclose confidential information to defend against Trophy Depot's claims on this motion.  FZLZ filed its papers under seal to protect Crown's information.

[21/]   Accord, e.g., Chen v. Wai? Cafe Inc., 10 Civ. 7254, 2016 WL 722185 at *3 (S.D.N.Y. Feb. 19, 2016); Ades v. 57th St. Laser Cosmetica, LLC, 11 Civ. 8800, 2013 WL 2449185 at *8 (S.D.N.Y. June 6, 2013); In re Dynex Capital, Inc. Sec. Litig., 05 Civ. 1897, 2011 WL 2581755 at *3 (S.D.N.Y. Apr. 29, 2011) ("Upon finding that a party has engaged in (continued...)

(2d Cir. 2002) ("[A] court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.").  A court also may use its inherent authority to sanction counsel for committing a fraud on the court.  <u>Chen</u> v. <u>Wai? Cafe Inc.</u>, 2016 WL 722185 at *3; <u>accord</u>, <u>e.g.</u>, <u>In re Dynex Capital, Inc. Sec. Litig.</u>, 2011 WL 2581755 at *4-5 (addressing whether counsel committed fraud on the court).

Fraud on the court "'embrace[s] only that species of fraud which does or attempts to, defile the court itself . . . so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'"  <u>Kupferman</u> v. <u>Consol. Research & Mfg. Corp.</u>, 459 F.2d 1072, 1078 (2d Cir. 1972).  Fraud on the court occurs where "'a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by . . . unfairly hampering the presentation of the opposing party's claim or defense.'"  <u>Passlogix, Inc.</u> v. <u>2FA Tech., LLC</u>, 708 F. Supp. 2d at 393.  To support sanctions, evidence of such an unconscionable scheme must be established by clear and convincing evidence.  <u>Scholastic, Inc.</u> v. <u>Stouffer</u>, 221 F. Supp.2d at 439.[22]

Generally, "[p]erjury alone does not constitute fraud upon the court."  <u>Skywark</u> v.

_____

[21]     (...continued)
misconduct that rises to the level of fraud on the court, the Court may impose sanctions."), <u>R. & R. adopted</u>, 2011 WL 2471267 (S.D.N.Y. June 21, 2011); <u>Passlogix, Inc.</u> v. <u>2FA Tech., LLC</u>, 708 F. Supp. 2d 378, 393-94 (S.D.N.Y. 2010); <u>Scholastic, Inc.</u> v. <u>Stouffer</u>, 221 F. Supp. 2d 425, 439-40 (S.D.N.Y. 2002) (addressing motion for sanctions based on falsified evidence), <u>aff'd</u>, 81 F. App'x 396 (2d Cir. 2003); <u>Skywark</u> v. <u>Isaacson</u>, 96 Civ. 2815, 2000 WL 145465 at *3 (S.D.N.Y. Feb. 9, 2000); <u>Zimmerman</u> v. <u>Poly Prep Country Day Sch.</u>, No. 09 CV 4586, 2012 WL 2049493 at *24 (E.D.N.Y. June 6, 2012) ("Once it has been determined that a party has engaged in conduct constituting a fraud on the court, the Court may impose sanctions.").

[22]     <u>Accord</u>, <u>e.g.</u>, <u>Ades</u> v. <u>57th St. Laser Cosmetica, LLC</u>, 2013 WL 2449185 at *8; <u>In re Dynex Capital, Inc. Sec. Litig.</u>, 2011 WL 2581755 at *2; <u>Passlogix, Inc.</u> v. <u>2FA Tech., LLC</u>, 708 F. Supp. 2d at 393.

Isaacson, 96 Civ. 2815, 1999 WL 1489038 at *14 (S.D.N.Y. Oct. 14, 1999), aff'd, 2000 WL 145465 at *3 (S.D.N.Y. Feb. 9, 2000).[23/]  "[N]either perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant," and, moreover, "'[p]erjury and fabricated evidence are evils that can and should be exposed at trial.'"  Gleason v. Jandrucko, 860 F.2d 556, 560 (2d Cir. 1988).[24/]  Nevertheless, perjury can be considered fraud on the court "'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'"  Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d at 393.[25/]

Cases that have found "fraud on the court" typically involve the outright fabrication of key evidence, see, e.g., Ades v. 57th St. Laser Cosmetica, LLC, 2013 WL 2449185 at *11-12 (defendant fabricated and testified in support of evidence establishing a complete defense to one of plaintiff's theories of liability); Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d at 440-45 (defendant fabricated and testified in support of multiple pieces of evidence that formed the basis for her counterclaims), or schemes to withhold evidence and/or lie repeatedly about matters vital to the

---

[23/]  Accord, e.g., Chen v. Wai? Cafe Inc., 2016 WL 722185 at *3; In re Dynex Capital, Inc. Sec. Litig., 2011 WL 2581755 at *2; Sanchez v. Litzenberger, 09 Civ. 7207, 2011 WL 672413 at *4 (S.D.N.Y. Feb. 24, 2011); McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).

[24/]  See also, e.g., In re Grievance Comm. of U.S. Dist. Court, Dist. of Conn., 847 F.2d 57, 64 (2d Cir. 1988) (Van Graafeiland, J., concurring) ("Untruthful testimony by a witness, which has not been suborned by his lawyer, does not, standing alone, constitute fraud upon the court.  This is particularly true where . . . the testimony is given during a pretrial deposition. Until the deposition is placed in evidence, it does not become part of the case before the court." (citations omitted)).

[25/]  Accord, e.g., McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d at 445 ("Our judicial system generally relies on litigants to tell the truth and participate in discovery in good faith."); Skywark v. Isaacson, 2000 WL 145465 at *3 ("While this Court . . . recognize[s] that perjury alone does not constitute fraud[,] the repeated wilful misconduct and bad faith of plaintiff here cries out for this ultimate sanction.").

case, see, e.g., McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d at 446-60 (plaintiff

lied under oath to prevent discovery of relevant evidence and deposition of key witness, altered

audio evidence, fraudulently transferred assets and feigned homelessness to bolster damages, and

refused to admit wrongdoing when confronted with evidence of deceptions); Skywark v. Isaacson,

1999 WL 1489038 at *3-14 (plaintiff withheld discoverable documents and lied under oath to cover

up evidence of malingering, engaged in court-supervised settlement discussions based on misleading

record, and refused to admit wrongdoing when confronted with evidence of deceptions).[26]

Crown witnesses Lori Rubin and Erin Andrews now admit to willfully lying in

depositions in order to conceal the existence of Crown designer Valerie Bizzarro.  (See page 8

above.)  The record strongly suggests that Elyse Weisenfeld and Eric Diamond also willfully lied

in depositions to conceal Bizzarro's existence.  (See pages 4-5, 8 n.5 above.)  These depositions took

place in April and May 2016 (see pages 4-6 above), and Crown voluntarily dismissed the case

shortly thereafter.[27]

The record also indicates falsehoods and inconsistencies with regard to interns.

Andrews admits in her affidavit that she lied during her deposition when she denied knowledge of

interns.  (See page 8 above.)  Rubin's deposition testimony that some of the awards at issue "could

---

[26]    But see Bravia Capital Partners Inc. v. Fike, 2015 WL 1332334 at *18 (declining to find
fraud on the court despite evidence that plaintiff "spoliated three emails and submitted one
forged document as an exhibit to this Court").

[27]    Crown's deception regarding Bizzarro's existence began as early as February 2016, when Ms.
Weisenfeld signed interrogatory answers stating that the only persons involved in the design
of Crown's products were Lori Rubin, Eric Diamond, and Erin Andrews.  (See page 3
above.)  Bizzarro designed at least four of the awards at issue using prior art (see pages 6-7,
7 n.4 above), making her existence material to Trophy Depot's defense to Crown's claims
of copyright infringement (see pages 3, 13-14 above).  Nevertheless, there is no indication
in the record that had Trophy Depot been informed of Bizzarro in February, Trophy Depot
would have taken her deposition before the other depositions in April.

have been" designed by interns (Dkt. No. 121-10: Rubin Dep. at 122) is confirmed by her affidavit, in which she states that an intern "has now been identified as the author of twenty-three of the designs at issue." (See pages 8-9 above.) This revelation conflicts with Crown's February 2016 interrogatory response indicating, in effect, "that the only persons involved in the design of [Crown's] products were [Lori] Rubin, [Eric] Diamond, and [Erin] Andrews." (See page 3 above.) As Trophy Depot notes (see Dkt. No. 122: Trophy Depot Reply to FZLZ Br. at 3-4), the existence of interns and their possible relevance to this suit was revealed to FZLZ attorneys at an April 18, 2016 meeting—nearly a month before FZLZ withdrew from representation. (See pages 4, 8 above.) FZLZ's attorneys, however, made no attempt to amend those interrogatory responses or notify Trophy Depot's counsel. Because an intern designed twenty-three of the roughly two-hundred awards at issue, her existence was material to Trophy Depot's defense of Crown's claims of copyright infringement. (See pages 3, 13-14 above.)

Finally, Crown's witnesses lied during their depositions regarding Crown's use of third-party art during the award design process. Trophy Depot correctly notes (see Trophy Depot Reply to Crown Br. at 4) that Rubin testified that Crown's awards were "original," meaning "designed without reference to any outside [or] . . . third-party design." (See pages 4-5 above.) Rubin states in her affidavit that she "should have" testified in deposition that "clip art and other images from time to time are used by our artists as a reference" during the design process. (See page 9 above.) Andrews' affidavit contains a similar admission regarding her use of third-party images during the design process. (See page 8 above.) Ms. Weisenfeld testified in deposition that she believed a particular award could not have been based on a third-party image "[b]ecause our designers designed it" (Dkt. No. 92-63: Weisenfeld Dep. at 113), but she was at the April 18, 2016 meeting at which Crown representatives admitted to FZLZ attorneys that "it was possible that some

of the [works] at issue had been designed by . . . interns, who could have used stock photographs or clip art without authorization" (see page 4 above).

The record thus contains clear and convincing evidence of intentional falsehoods by Crown's witnesses that, to some extent, "hamper[ed] the presentation of [Trophy Depot's] . . . defense" to Crown's claims of copyright infringement. Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d at 393. Nevertheless, the falsehoods did not rise to the level of an "unconscionable scheme," id., that "'defile[d] the court itself . . . so that the judicial machinery cannot perform in the usual manner,'" Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d at 1078. Crown's deceptions implicated only some of its award design infringement claims; Crown's remaining design infringement, website and trademark infringement, and unfair competition claims were unaffected.[28] As to the implicated infringement claims, the "'judicial machinery'" did perform in the usual manner, Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d at 1078, insofar as Crown's falsehoods were brought to light through the discovery process and would have been brought to bear during trial,[29]

---

[28]   Trophy Depot appears to suggest that Crown's deceptions permit an inference that all of the designs at issue in this case were based on prior art such that Crown's copyrights are invalid. (See Trophy Depot Reply to Crown Br. at 7 ("Defendants believe that public policy demands that the burden now shift to Crown to demonstrate that any of its work is truly original.").) But Trophy Depot has not provided "clear and convincing evidence" sufficient to support such an inference for any designs beyond the thirteen to twenty-one in issue, much less for all of Crown's designs. (See also page 13 n.14 above.)

[29]   At trial, Crown would have had to prove that Trophy Depot not only copied Crown's designs, but that such copying was wrongful. See, e.g., Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 100 (2d Cir. 2014). "A fundamental rule of copyright law is that it protects only 'original works of authorship,' those aspects of the work that originate with the author himself." Id. at 102. Thus, "[t]he challenge in adjudicating copyright cases is . . . to determine what in [a work] originated with the author and what did not." Id. at 104. Copying those aspects of an author's work that did not originate with the author is not "wrongful copying," at least as to the author claiming copyright protection. Id. at 100 ("Not every portion or aspect of a copyrighted work is given copyright law's protection. Copying
(continued...)

cf. Gleason v. Jandrucko, 860 F.2d at 560.  Crown's deceptions affected only Trophy Depot; none of the tainted discovery was presented to or relied upon by the Court.  The facts of this case are less egregious than those in cases where courts have found "fraud on the court."  (See cases cited at pages 20-21 above.)  And as to FZLZ, Crown admits that it hid Bizzarro's existence from its own lawyers.  (See page 8 above.)

Even if Crown's misconduct rose to the level of "fraud on the court," sanctions still are not appropriate.  When fraud on the court is established, the Court may use its discretion to determine an appropriate sanction by considering such factors as:

> (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the [other party]; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; (v) whether further misconduct is likely to occur in the future.

Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d at 444 (citing McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d at 461).[30/]

Two of these factors weigh in favor of sanctions against Crown (but not FZLZ).

---

[29/]  (...continued)
these aspects of a work is not wrongful, and thus not all copying is wrongful."); accord, e.g., Folio Impressions, Inc. v. Byer California, 937 F.2d 759, 765 (2d Cir. 1991) ("This test for illicit copying to prove infringement of another's copyright demands that the similarities relate to protectible material.").  Thus, in order to show that Trophy Depot's copying was wrongful, Crown would have had to prove at trial that the allegedly copied portions of Crown's designs were "original"—i.e., that they were not themselves derived from clipart or other sources.  See, e.g., eScholar, LLC v. Otis Educ. Sys., Inc., 04 Civ. 4051, 2005 WL 2977569 at *14 (S.D.N.Y. Nov. 3, 2005) ("'Original' merely means that the work was not copied and exhibits a minimal amount of creativity.").  Crown's concealment of interns and Valerie Bizzarro hamstrung its ability to prove its case and rebut Trophy Depot's evidence that Crown's designs were derived from clip art and stock photographs.

[30/]  Accord, e.g., Chen v. Wai? Cafe Inc., 2016 WL 722185 at *4; Bravia Capital Partners Inc. v. Fike, 2015 WL 1332334 at *3; In re Dynex Capital, Inc. Sec. Litig., 2011 WL 2581755 at *3; Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d at 394.

First, at least some of Crown's misconduct was the product of intentional bad faith.  As discussed above (see pages 8-9, 21, 22-23 above), Crown's witnesses now admit to lying during their depositions regarding the existence of Valerie Bizzaro and Crown's use of third-party images in the design process.[31/]  Moreover, the conduct of multiple Crown representatives in concealing the existence of Valerie Bizzaro both in Crown's responses to interrogatories and at depositions certainly constituted a pattern of misbehavior rather than an isolated instance.  Crown's misconduct was unknown to FZLZ, as Crown's witnesses have admitted.  (See page 8 above.)

The other factors identified in Scholastic, Inc. v. Stouffer, 221 F. Supp. 2d at 444, weigh against sanctions.  Crown's deceptions began with its February 2016 responses to Trophy Depot's interrogatories, failing to disclose Bizzaro's existence.  (See pages 3, 21 n.27 above.)  But the depositions of Crown's witnesses began in late April 2016 and ended with the deposition of Erin Andrews on May 10, 2016, and there is no evidence that Trophy Depot would have deposed Bizzaro earlier than that.  (See pages 4-6 above.)  Crown's case was voluntarily dismissed two days later as an attempt to rectify Crown's misconduct.[32/]  (See pages 7-8 above.)  In sum, this was not a case in which the pattern of misconduct stretched over a period of years, touched on all aspects of the case, and necessitated a lengthy and expensive process of untangling a dense web of lies.

---

[31/]    The Court finds it less clear that Crown's witnesses intentionally misrepresented their knowledge regarding whether Crown possessed a "license" with Shutterstock. Andrews, for example, admits in her affidavit to knowing that Crown "had a database with images downloaded from Shutterstock" (Andrews Aff. ¶ 16), but this does not establish by clear and convincing evidence that she wilfully lied regarding her knowledge of "licenses."

[32/]    Trophy Depot might have sought reimbursement of its attorney fees for the two-day period before the case was dismissed, or even from April 20 to May 12.  But it did not do so, only arguing for all of its attorneys' fees for the entire case.  (See Trophy Depot Br. at 27-35.)  Even in its reply briefs, Trophy Depot went for broke.  (See Trophy Depot Reply to FZLZ Br. at 9-10.)  The Court will not consider a remedy that Trophy Depot did not seek.

Compare McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d at 446-60.  Furthermore, because Crown's principals have now come clean in publicly filed affidavits, and because the case was voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), it is unlikely that the misconduct will reoccur in any future case.

Trophy Depot makes much of Lori Rubin's statement in her affidavit that Crown "continue[s] to consider [its] next steps, which may include re-filing this lawsuit."  (Dkt. No. 114: Rubin Aff. ¶ 21; see Trophy Depot Reply to Crown Br. at l n.1.)  Trophy Depot infers from such language that Crown has not learned its lesson, thus necessitating the imposition of monetary sanctions and dismissal with prejudice.  (See Trophy Depot Reply to Crown Br. at l n.1.)  The Court disagrees.  Trophy Depot's vigilance during discovery prompted Crown to voluntarily terminate the suit before Trophy Depot was forced to incur legal expenses from further motion practice or trial—what many would consider a victory.[33]  Should Crown re-file, moreover, its witnesses' prior misconduct likely will make establishing Crown's credibility with the factfinder an uphill battle.

Notably, Trophy Depot from the start had other avenues of pursuing its contention that Crown's claims were baseless, and that Crown's witnesses were lying prior to dismissal.  (See

---

[33]   Nor is it a given, as Trophy Depot implies, that Trophy Depot would have been entitled to fees if the case had been resolved on the merits in Trophy Depot's favor.  (See Trophy Depot Br. at 1 n.1, 23.)  Fees "may" be awarded to a prevailing party in a copyright infringement case pursuant to 17 U.S.C. § 505.  See, e.g., 16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 263-64 (2d Cir. 2015).  In determining whether such an award is warranted, courts consider "'frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'"  Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 & n.19, 114 S. Ct. 1023, 1033 & n.19 (1994).  "Of these factors, 'objective reasonableness . . . should be given substantial weight in determining whether an award of attorney['s] fees is warranted' because 'the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act.'"  Zalewski v. Cicero Builder Dev., Inc., 754 F.3d at 108.  As discussed above (see pages 12-15 above), Crown's copyright claims were not objectively unreasonable.

Dkt. No. 110: FZLZ Opp. Br. at 19-20 (noting Trophy Depot's failure to move against the complaint for Rule 11 sanctions, to move for summary judgment despite alleged "irrefutable" evidence that Crown's claims were colorless, or to move for sanctions at an earlier date).)  Trophy Depot also could and should have answered the Amended Complaint (its dismissal motion only sought partial dismissal), which would have cut off Crown's ability to voluntarily dismiss the case without prejudice.

Finally, the Court notes that Federal Rule of Civil Procedure 41, under which Crown voluntarily dismissed this case, see Fed. R. Civ. P. 41(a)(1)(A)(i), provides that where "a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court . . . may order the plaintiff to pay all or part of the costs of that previous action . . . and . . . may stay the proceedings until the plaintiff has complied."  Fed. R. Civ. P. 41(d); see also, e.g., Hintergerger v. Catholic Health Sys., No. 08-CV-952S, 2012 WL 1965435 at *1 (W.D.N.Y. May 31, 2012) ("Although Rule 41(d) does not explicitly provide for an award of attorney's fees as part of 'costs,' the weight of authority in this Circuit supports such an award.").  So if Crown commences a new action against Trophy Depot, Rule 41(d) may prove an effective alternative to sanctions.

In any event, the Court retains discretion whether to impose sanctions under its inherent power or § 1927.  In the exercise of such discretion, Trophy Depot's sanctions motion should be denied.  See, e.g., VIDIVIXI, LLC v. Grattan, 15 Civ. 7364, 2016 WL 4367972 at *5 (S.D.N.Y. Aug. 13, 2016) ("The Court has discretion to decide whether to impose sanctions under § 1927 and its inherent authority, and it chooses to exercise its discretion not to impose sanctions under either power."); Sorenson v. Wolfson, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016) ("The Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent

authority."); <u>Schutte Bagclosures Inc.</u> v. <u>Kwik Lok Corp.</u>, 12 Civ. 5541, 2014 WL 6860294 at *1 (S.D.N.Y. Dec. 5, 2014) ("The Court has discretion to decide whether to impose sanctions under . . . 28 U.S.C. § 1927, and chooses to exercise its discretion not to impose sanctions in this case."); <u>Bowman Imp./Exp., Ltd.</u> v. <u>F.J. Elsner & Co. N. Am.</u>, 02 Civ. 3436, 2003 WL 21543522 at *2 (S.D.N.Y. July 9, 2003) ("In any event, the Court has discretion under . . . § 1927 and chooses not to exercise its discretion to award sanctions in this case."); <u>see also</u> cases cited at pages 9-11 above.

## CONCLUSION

For the reasons set forth above, Trophy Depot's motion for sanctions pursuant to the Court's inherent authority and 28 U.S.C. § 1927 (Dkt. No. 87: Defs.' Mot. for Sanctions) should be <u>DENIED</u>.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. <u>See also</u> Fed. R. Civ. P. 6.  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lewis Kaplan, 500 Pearl Street, Room 2240, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Kaplan (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas</u> v. <u>Arn</u>, 474 U.S. 140, 106 S. Ct. 466 (1985); <u>Ingram</u> v. <u>Herrick</u>, 475 F. App'x 793, 793 (2d Cir. 2012); <u>IUE AFL-CIO Pension Fund</u> v. <u>Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993), <u>cert. denied</u>, 513 U.S. 822, 115 S. Ct. 86 (1994); <u>Frank</u> v. <u>Johnson</u>, 968 F.2d 298, 300 (2d Cir.), <u>cert. denied</u>, 506 U.S. 1038, 113 S. Ct. 825 (1992); <u>Small</u> v. <u>Sec'y of Health & Human Servs.</u>, 892 F.2d 15, 16 (2d Cir. 1989); <u>Wesolek</u> v. <u>Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d

Cir. 1988); <u>McCarthy</u> v. <u>Manson</u>, 714 F.2d 234, 237-38 (2d Cir. 1983).


Dated:      New York, New York
             February 13, 2017

                                                _____
                                              **Andrew J. Peck**
                                        United States Magistrate Judge


Copies ECF to:      All Counsel
                        Judge Kaplan